**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

NICOLE WHITNEY,

Plaintiff,

vs.

FRANKLIN GENERAL HOSPITAL; FRANKLIN COUNTY, IOWA; MERCY HEALTH SERVICES—IOWA CORP.; MERCY HEALTH NETWORK, INC.; and KIM PRICE,

Defendants

No. C 13-3048-MWB

**MEMORANDUM OPINION AND ORDER REGARDING HOSPITAL DEFENDANTS' MOTION TO DISMISS**

---

**TABLE OF CONTENTS**

I.   **INTRODUCTION**.................................................................... 3
     A.  *Factual Background* ...................................................... 3
         1.  *The pertinent record* ............................................ 3
         2.  *Whitney's allegations* ........................................... 4
             a.  *The parties* ................................................. 4
             b.  *The alleged misconduct* ...................................... 5
             c.  *Whitney's administrative complaints and the aftermath* ........................................................ 7
     B.  *Procedural Background* .................................................. 8
         1.  *Whitney's Amended Complaint* ..................................... 8
         2.  *The defendants' responses* ....................................... 8
         3.  *Voluntary dismissals and remaining claims* ....................... 9

II.  **LEGAL ANALYSIS** ............................................................. 11
     A.  *Standards For Dismissal For Failure To State A Claim* .................. 11
     B.  *The Hospital Defendants' Motion To Dismiss* ........................... 14
         1.  *Failure to exhaust administrative remedies on ICRA, Title VII, and ADA claims* ......................................... 14
             a.  *Arguments of the parties* .................................. 14

|   |   | b. | Analysis | 16 |
|   |   |   | i. | The exhaustion requirement as to related defendants | 16 |
|   |   |   | ii. | Exhaustion as to the Mercy Defendants | 18 |
|   |   |   | iii. | Dismissal on the basis of an affirmative defense | 19 |
|   |   | c. | Summary | 20 |
|   | 2. | | The FMLA claim | 20 |
|   |   | a. | Arguments of the parties | 20 |
|   |   | b. | Analysis | 22 |
|   |   |   | i. | Types of FMLA claims | 22 |
|   |   |   | ii. | Whitney's "interference/entitlement" claim | 24 |
|   |   |   | iii. | Whitney's "retaliation" claim | 25 |
|   |   |   | iv. | Whitney's "discrimination" claim | 26 |
|   |   | c. | Summary | 28 |
| III. | CONCLUSION | | | 29 |

A medical records clerk and receptionist alleges that the medical director of the county hospital and medical center for which she worked subjected her to sexual harassment, sexual assault, sexual abuse, and sexual exploitation during her employment. She alleges that when she eventually complained about this misconduct and sought a leave of absence to deal with resulting depression and post-traumatic stress disorder, the hospital and its managers subjected her to disciplinary action and ultimately fired her. She has asserted claims pursuant to the Iowa Civil Rights Act (ICRA), IOWA

CODE CH. 216; Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*; the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*; and state tort claims of sexual exploitation and assault and battery. The county answered the records clerk's claims and the medical director was ultimately dismissed from this lawsuit, for failure to take action against him within the time provided by local rules. The hospital, the companies that operated and managed the hospital, the hospital's human resources manager, and the hospital administrator have moved to dismiss many of the records clerk's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state claims upon which relief can be granted.

## I. INTRODUCTION

### A. Factual Background

#### 1. The pertinent record

"When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Thus, the factual background to the pending Motion To Dismiss must be drawn from the factual allegations in plaintiff Nicole Whitney's Amended Complaint, unless other matters are also incorporated by reference, integral to her claims, subject to judicial notice, matters of public record, orders, or in the record of the case. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citing 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)). In this case, Whitney did not attach any documents or exhibits to her original Complaint or Amended Complaint, although she does allege in her Amended Complaint that she exhausted administrative remedies, because she timely filed charges of employment

discrimination with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission and received a right-to-sue letter. The moving defendants have attached to their Motion To Dismiss various documents from the administrative record, which I may also consider on a Rule 12(b)(6) motion to dismiss. *See Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1102 (8th Cir. 2000). I also note that the various counts of Whitney's Amended Complaint do little or nothing more than baldly allege the elements of her claims, without identifying the specific conduct on which they are based. Thus, the pertinent factual basis for her claims is found exclusively or almost exclusively in the Factual Background section of her Amended Complaint. Because Whitney rarely alleges that specific defendants took specific actions, I have indicated where she has alleged that "Defendants" took certain actions.

### 2. *Whitney's allegations*

#### a. *The parties*

Whitney alleges the following facts as the basis for her claims, which I must accept as true for present purposes. *Erickson*, 551 U.S. at 94. Whitney was hired on approximately April 7, 2006, to work "for Defendants" as a medical records clerk and receptionist. Those "Defendants" are alleged to be the following: Franklin General Hospital, a county hospital established pursuant to IOWA CODE CH. 347 by defendant Franklin County, Iowa, allegedly doing business in Franklin County as "Franklin General Hospital" and "Franklin Medical Center Clinic"; Franklin County, a political subdivision of the State of Iowa; Mercy Health Services—Iowa Corp., a Delaware corporation, doing business in Franklin County as "Mercy Medical Center—North Iowa, Corp." and "Franklin General Hospital," and allegedly providing management services to Franklin General Hospital; Mercy Health Network, Inc., a Delaware corporation doing business as "Franklin General Hospital"; Brian Hansen, who was employed by the "Defendants" as a physician and as the hospital's medical director until his termination on

approximately June 1, 2012;[1] Victoria (Vicky) Kruse, who was allegedly "Defendants'" human resources manager;[2] and Kim Price, who was allegedly "Defendants'" administrator. Non-defendant Koreen Van Horn was allegedly the clinic manager.

### b.     *The alleged misconduct*

Dr. Hansen became Whitney's family doctor in approximately October 2006, but thereafter he sexually harassed her by propositioning her, making sexually offensive comments towards her, showing her pornography on his computer, and masturbating in her presence. Dr. Hansen used his positions of authority as Whitney's doctor and employer to sexually abuse, assault, and exploit her, and repeatedly told her that nobody would believe her if she reported his abuse. Whitney was too afraid to report Dr. Hansen's abuse, and she thought that she was the only one that Dr. Hansen was sexually abusing. In January 2012, however, other women began reporting that Dr. Hansen had also sexually harassed and assaulted them. On approximately June 1, 2012, Dr. Hansen was fired for sexually harassing, assaulting, abusing, and exploiting at least eight women at Franklin General Hospital.

On approximately June 7, 2012, Whitney reported to "Defendants" that Dr. Hansen had sexually abused her, as well. On approximately June 28, 2012, the "Defendants" disciplined Whitney for engaging in sexual relations on "Defendant's premises and on company time," based on Dr. Hansen's sexual abuse, assault, and exploitation of her. "Defendants" also disciplined Dr. Hansen's other victims for having

---

[1] Brian Hansen was dismissed from this action on January 14, 2014, by Order (docket no. 39) of the Clerk of Court, because no appropriate action had been taken as to him within the time provided by applicable local rules.

[2] All claims against Victoria Kruse were dismissed by Order (docket no. 43), filed January 24, 2014, pursuant to the parties' January 24, 2014, Stipulation To Dismiss Without Prejudice (docket no. 42).

sexual relations on company property and on company time, also premised on Dr. Hansen's sexual abuse, assaults, and exploitation of them.

Whitney suffered from major depressive disorder and post-traumatic stress disorder as a result of sexual abuse, assaults, and exploitation, and she was sometimes unable to work because of these mental health conditions. "Defendants" repeatedly disciplined Whtiney because of her absences from work necessitated by her mental health conditions, which had, in turn, been caused by the abuse that the "Defendants" committed and permitted.

In August 2012, Whitney's treating mental health professionals recommended that she take a leave of absence. Whitney told Koreen Van Horn about her need for leave pursuant to the Family Medical Leave Act (FMLA), and Van Horn said that they would need to talk to Vicky Kruse about the matter. When Whitney arrived for a meeting with Van Horn and Kruse regarding her request for FMLA leave, however, Van Horn and Kruse "greeted her with disciplinary action." That disciplinary action was allegedly for Whitney's absences necessitated by her mental health conditions, which had been caused by the abuse that "Defendants" had allegedly committed and permitted, for mentioning the abuse in the workplace, and for failing to "punch out" before picking up lunch for other employees in the office. "Defendants" allegedly recognized that Whitney's workplace comment regarding the abuse was a way to cope with the trauma that she had experienced, but they punished her anyway. Other employees who did not "punch out" before picking up lunch for the office allegedly were not disciplined, but those employees had not reported sexual harassment, abuse, and exploitation by hospital doctors. Whitney told Van Horn and Kruse that she believed that the "Defendants" were retaliating against her because of her complaints of sexual harassment, abuse, and exploitation, but the "Defendants" failed to investigate this complaint of retaliation.

### c. *Whitney's administrative complaints and the aftermath*

Whitney filed her administrative civil rights complaints "against Defendants" on September 12, 2012. On September 25, 2012, the Iowa Board of Medicine suspended Dr. Hansen's medical license for, among other things, a pattern of sexual misconduct including nonconsensual sexual contact with female patients and/or coworkers. The "Defendants" knew of this action by the Iowa Board of Medicine on or shortly after September 25, 2012.

Whitney took FMLA leave during August of 2012, and she gradually worked her way back up to working full time by October 23, 2012. After Whitney returned from FMLA leave, Kim Price refused even to acknowledge her when they saw each other at work. At some point during the fall of 2012, Lee Elbert replaced Koreen Van Horn as clinic manager and became Whitney's new supervisor. Whitney alleges that, on November 5, 2012, the "Defendants" again disciplined her by placing her on a "Performance Action Plan" for allegedly talking excessively and using foul language. When Whitney asked for examples of instances of such misconduct, the "Defendants" refused to provide any. Other employees who had not reported sexual harassment, abuse, and exploitation by hospital doctors or who had not filed civil rights complaints were not disciplined for such vague or minor infractions as excessive talking or using foul language.

On December 3, 2012, the "Defendants" fired Whitney for allegedly "engaging in non-productive behaviors," having an "unprofessional attitude," and for poor attendance. The "Defendants" again refused to provide any examples of when and how Whitney had committed such misconduct. Whitney's poor attendance was caused, in large part, by the abuse that the "Defendants" had committed and permitted against her.

Whitney alleges that Dr. Hansen, Kruse, Price, Van Horn, and Elbert were all agents of Franklin General Hospital, Franklin County, Mercy Health Services—Iowa

Corp., and Mercy Health Network, Inc., and were acting within the scope of their employment at all relevant times.

### B. Procedural Background

### 1. Whitney's Amended Complaint

Whitney filed her original Complaint (docket no. 2) in this matter on August 29, 2013, and her Amended Complaint (docket no. 4) on September 23, 2013. In Count I of her Amended Complaint, Whitney asserted claims of sexual harassment, sex discrimination, and retaliation by the "Defendants" in violation of the Iowa Civil Rights Act (ICRA). In Count II, she asserted claims of sexual harassment, sex discrimination, and retaliation by the "Defendants" in violation of Title VII of the 1964 Civil Rights Act. In Count III, she alleged disability discrimination and retaliation by the "Defendants" in violation of the ICRA. In Count IV, she alleged failure to accommodate her disabilities, disability discrimination, and retaliation by the "Defendants" in violation of the Americans with Disabilities Act (ADA). In Count V, she alleged interference with FMLA leave and retaliation for exercising FMLA rights by the "Defendants" in violation of the FMLA. In Count VI, she alleged "sexual exploitation" by Dr. Hansen and sought relief only against Dr. Hansen. In Count VII, Whitney alleged a claim of "assault and battery," apparently against all of the "Defendants."

### 2. The defendants' responses

On November 19, 2013, Franklin County filed its Answer (docket no. 22), denying Whitney's claims and asserting various affirmative defenses. On January 14, 2014, the Clerk of Court entered an Order Of Dismissal (docket no. 39) dismissing Brian Hansen from this action, because no appropriate action had been taken within the time provided by applicable local rules.

On December 3, 2013, defendants Franklin General Hospital, Mercy Health Services—Iowa Corp., Mercy Health Network, Inc., Victoria Kruse, and Kim Price, whom I will call collectively "the Hospital Defendants," filed the Motion To Dismiss With Prejudice (docket no. 28) now before me. In that Motion, the Hospital Defendants seek dismissal, with prejudice, of Counts I, II, III and IV of Whitney's Amended Complaint as to Mercy Health Services-Iowa Corp., Mercy Health Network, Inc., and Victoria Kruse; Counts II and IV of Whitney's Amended Complaint as to Kim Price and Victoria Kruse; and Counts V, VI and VII of Whitney's Amended Complaint as to all of the Hospital Defendants. In a Resistance (docket no. 31), filed December 16, 2013, Whitney indicated her intention to dismiss voluntarily various claims in her Amended Complaint against various defendants, but resisted dismissal of other challenged claims. On December 24, 2013, the Hospital Defendants filed a Reply (docket no. 34) in further support of dismissal to the challenged claims that Whitney had indicated she would not voluntarily dismiss.

### 3. *Voluntary dismissals and remaining claims*

On January 24, 2014, the parties filed a Stipulation To Dismiss Without Prejudice (docket no. 42) for dismissal of certain parties and claims. Pursuant to that Stipulation, I filed an Order (docket no. 43), on January 24, 2014, dismissing without prejudice all claims against Victoria Kruse; Counts II, IV, and VII against Kim Price; and Count VII against Franklin General Hospital, Mercy Health Services—Iowa Corp., Mercy Health Network, Inc., and Franklin County. Thus, the chart below shows the claims originally asserted against each of the defendants and the claims remaining after voluntary or involuntary dismissals, with claims in ***bold italics*** challenged in the Hospital Defendants' Motion To Dismiss.

| Defendant | Original Claims | Remaining Claims |
|---|---|---|
| Franklin County | I (ICRA-sex),<br>II (Title VII- sex),<br>III (ICRA-disability),<br>IV (ADA-disability),<br>V (FMLA),<br>VII (Assault) | I, II, III, IV, V |
| Franklin General Hospital | I, II, III, IV, *V*, *VII* | I, II, III, IV, *V* |
| Mercy Health Services—Iowa Corp. | *I*, *II*, *III*, *IV*, *V*, *VII* | *I*, *II*, *III*, *IV*, *V* |
| Mercy Health Network, Inc. | *I*, *II*, *III*, *IV*, *V*, *VII* | *I*, *II*, *III*, *IV*, *V* |
| Victoria Kruse | *I*, *II*, *III*, *IV*, *V*, *VII* | None |
| Kim Price | I, *II*, III, *IV*, *V*, *VII* | I, III, *V* |
| Brian Hansen | I, II, III, IV, V, VI,[3] VII | None |

Thus, even if the Hospital Defendants' Motion To Dismiss is granted in its entirety, this case will proceed against defendant Franklin County on Counts I (ICRA-sex), II (Title VII-sex), III (ICRA-disability), IV (ADA-disability), and V (FMLA); against defendant Franklin General Hospital on Counts I, II, III, and IV; and against defendant Kim Price on Counts I (ICRA-sex) and III (ICRA-disability). Also, the only parts of the Hospital Defendants' Motion To Dismiss still in dispute pertain to Whitney's state and federal claims of sex and disability discrimination (including retaliation and failure to accommodate) against the Mercy Defendants and Whitney's FMLA claim against all of the Hospital Defendants.

---

[3] Whitney clarifies that she only ever asserted Count VI, alleging "sexual exploitation," against defendant Hansen.

## II.    LEGAL ANALYSIS

### A.    Standards For Dismissal For Failure
### To State A Claim

The Hospital Defendants seek dismissal of certain claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). As the Eighth Circuit Court of Appeals has explained,

> We review de novo the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*, 686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating the same standards).

Courts consider "plausibility" under this *Twom-bal* standard[4] by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney*, 700 F.3d at 1128 (quoting

---

[4] The "*Twom-bal*" standard is my nickname for the "plausibility" pleading standard established in the United States Supreme Court's twin decisions on pleading requirements, and standards for dismissal for failure to state a claim upon which relief

*Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The Eighth Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Id.* Nevertheless, the question "is not whether [the pleader] might at some later stage be able to prove [facts alleged]; the question is whether [it] has adequately asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id.* at 1129. Thus,

> [w]hile this court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *[Bell Atl. Corp. v.] Twombly*, 550 U.S. [544,] 555, 127 S.Ct. 1955 [(2007)]).

*Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Whitney*, 700 F.3d at 1128 (stating the same standards).

In assessing "plausibility," as required under the *Twom-bal* standard, the Eighth Circuit Court of Appeals has explained that courts "consider[ ] only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint,'" *Whitney*, 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir.

---

can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for claims in federal court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

2003)), and "'materials that are part of the public record or do not contradict the complaint.'" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999), and citing *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011)). A more complete list of the matters outside of the pleadings that the court may consider, without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, pursuant to Rule 12(d), includes "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Miller*, 688 F.3d at 931 n.3 (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)).

Various federal Circuit Courts of Appeals have expressly recognized that, in addition to dismissal for factual implausibility, the *Twom-bal* standard still permits dismissal pursuant to Rule 12(b)(6) of a claim that lacks a cognizable legal theory. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013) (a claim may be dismissed if it is based on an "indisputably meritless legal theory"); *Commonwealth Property Advocates, L.L.C. v. Mortgage Electronic Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011) ("Dismissal is appropriate if the law simply affords no relief."); *see also Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (recognizing that a claim must plead sufficient facts under a "viable legal theory").

I will apply these standards to the Hospital Defendants' Motion To Dismiss, but I will consider the Motion To Dismiss only as to remaining defendants and remaining claims.

### B. The Hospital Defendants' Motion To Dismiss

#### 1. Failure to exhaust administrative remedies on ICRA, Title VII, and ADA claims

The Hospital Defendants contend, first, that Counts I and II—the ICRA and Title VII claims, respectively, for sexual harassment, sex discrimination, and retaliation—and Counts III and IV—the ICRA and ADA claims, respectively, for disability discrimination and retaliation and for failure to accommodate disabilities—must be dismissed as to defendants Mercy Health Services-Iowa Corp. and Mercy Health Network, Inc. (the Mercy Defendants) for failure to exhaust administrative remedies. Whitney asserts that she has exhausted administrative remedies as to these claims against the Mercy Defendants.

#### a. Arguments of the parties

The Mercy Defendants argue that administrative procedures are a prerequisite to filing a civil suit for relief under the ICRA, Title VII, and the ADA. Furthermore, they contend that the particular defendants against whom such claims are asserted must be identified in the administrative process. They acknowledge that Whitney has alleged that she filed timely administrative charges against the "Defendants," but they contend that the administrative record shows that she never named the Mercy Defendants as respondents in either her initial or her amended administrative complaints. Thus, the Mercy Defendants contend that the right-to-sue letter that Whitney received gave her no leave to commence a civil action against them. They contend, further, that these claims should be dismissed with prejudice, because it is now too late for Whitney to file administrative claims against them to satisfy the exhaustion requirement.

Whitney responds that her failure to name the Mercy Defendants specifically in her administrative complaints does not bar her ICRA, Title VII, or ADA claims, because

the Mercy Defendants are closely-related entities to or have substantial identity with the ones that she did name in her administrative complaints. She contends that complainants at the administrative level should not be charged with knowledge of the often intricate legal corporate relationships of closely-related operating units.

More specifically, here, she contends that the Mercy Defendants operated and managed Franklin General Hospital, even though Franklin General Hospital is owned and legally controlled by Franklin County, and that the Mercy Defendants are, themselves, part of a complicated corporate hierarchy.[5] She also contends that her Amended Complaint contains sufficient factual allegations to support an inference that the Mercy Defendants were aware of her administrative complaints and had every opportunity to respond to them and to participate in the administrative process. This is so, she argues, because she has alleged that the Mercy Defendants provided management services to Franklin General Hospital and were doing business as Franklin General Hospital, and that Kruse, Price, and Hansen were agents of the Mercy Defendants. Indeed, she points out that the Mercy Defendants do not argue that they were unaware of her claims or that they were prevented from participating in the administrative process, but only that she failed to appreciate the complexity of the corporate and management structure of what a reasonable person would have considered was just a normal county hospital. In short, she argues that the Mercy Defendants had every opportunity to participate in the administrative process through their contracting hospital and its administrator, Kim Price.

---

[5] In support of her contention concerning the complexity of the Mercy Defendants' corporate hierarchy, Whitney has attached various documents to her Resistance, but she has not shown that such documents can be considered on a Rule 12(b)(6) Motion To Dismiss.

In reply, the Mercy Defendants argue that Whitney has conceded, and the administrative documents leave no doubt, that Whitney never properly named them in the administrative process, so that she never exhausted her claims against them. As to Whitney's "substantial identity" argument, the Mercy Defendants argue that there are no factual allegations *in the Amended Complaint* to support an inference of "substantial identity." Even the new documents that Whitney improperly appended to her Resistance, the Mercy Defendants argue, do not show "substantial identity," because they do not even mention Franklin General Hospital or Price. The Mercy Defendants contend that an allegation that Price was an "agent" of the Mercy Defendants is simply not enough to suggest that the Mercy Defendants were "substantially identical" to Franklin General Hospital or Price. They also argue that Whitney's allegations that the Mercy Defendants managed or were doing business as Franklin General Hospital are merely conclusory, not sufficiently specific factual allegations.

### b.      *Analysis*

#### i.      *The exhaustion requirement as to related defendants*

Both parties have pointed to *Sedlacek v. Hach*, 752 F.3d 333 (8th Cir. 1985), as relevant to whether or not Whitney has administratively exhausted her claims against the Mercy Defendants. In *Sedlacek*, the Eighth Circuit Court of Appeals explained,

> As a general rule, a complainant must file a charge against a party with the EEOC before she can sue that party under Title VII. *See, e.g., EEOC v. McLean Trucking Co.*, 525 F.2d 1007, 1011 (6th Cir.1975); *Evans v. Sheraton Park Hotel*, 503 F.2d 177, 181 (D.C.Cir.1974); *Williams v. General Foods Corp.*, 492 F.2d 399, 404 (7th Cir.1974). Exceptions to this rule have been recognized, however, when "substantial identity" exists between the parties before the EEOC and the trial court. *See Chastang v. Flynn and Emrich Co.*, 365 F.Supp. 957, 964 (D.Md.1973) *aff'd on this point*, 541 F.2d 1040 (4th Cir.1976); *Hawkins v. Allis-Chalmers Corp.*, 527 F.Supp. 895, 897 n. 1 (W.D.Mo.1981). *See also Stevenson*

> *v. International Paper Co.*, 432 F.Supp. 390, 395, 397-98
> (W.D.La.1977) (noting exception when parties are "engaged
> in close legal relationship"); *EEOC v. Upjohn Corp.*, 445
> F.Supp. 635, 638 (N.D.Ga.1977) (noting exception when
> corporate parties are so closely related in their activities and
> management as to constitute an integrated enterprise).

*Sedlacek*, 752 F.2d at 336. The court also observed, "Aggrieved complainants should not be charged with the knowledge of the ofttimes intricate legal corporate relationships between closely held operating units." *Id.* Thus, "[t]he Title VII [and other administrative] notice requirement[s] [are] satisfied if a party 'sought to be included as a defendant knew or should have known that his conduct might be the subject of the inquiry at issue.'" *Id.* (quoting *Hanshaw v. Delaware Technical & Community College*, 405 F. Supp. 292, 296 (D. Del. 1975)). In *Sedlacek*, where the parties complaining about notice were the partners and managers of both an entity named in the administrative proceedings and an entity not so named, the court held that they either knew or should have known that the interrelation between the two entities would cause the unnamed entity to be implicated, as well as the named entity. *Id.*

Similarly, in *Greenwood v. Ross*, 778 F.2d 448 (8th Cir. 1985), cited by Whitney, the court rejected the notion that omission of a party's name from an administrative charge would automatically mandate dismissal of a subsequent judicial action under Title VII. *Greenwood*, 778 F.2d at 451. For example, the court explained, "The filing of an EEOC charge is unnecessary where an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Id.* Furthermore,

> "The purpose behind this exception is to prevent frustration
> of the goals of Title VII by not requiring procedural exactness
> in stating the charge." *Eggleston v. Chicago Journeymen
> Plumbers*, 657 F.2d 890, 905 (7th Cir.1981), *cert. denied*,

17

> 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). A
> suit is not barred "where there is sufficient identity of interest
> between the respondent and the defendant to satisfy the
> intention of Title VII that the defendant have notice of the
> charge and the EEOC have an opportunity to attempt
> conciliation." *Romero v. Union Pacific R.R.*, 615 F.2d at
> 1311.

*Greenwood*, 778 F.2d at 451. In *Greenwood*, the court held that the district court had

erred by dismissing the plaintiff's Title VII claim against individuals not named in the

administrative complaint, because there was "an identity of interest between the named

defendant . . . and the unnamed [individual] defendants. . . ." *Id.* This was so, because

those two unnamed individual defendants "were supported and directed by and acted on

behalf of the [named defendant] in the [named defendant's] employment relationship with

the [plaintiff]," had notice of the administrative proceedings against them, and were

represented by counsel from the beginning. *Id.* The court also rejected the challenge by

another unnamed defendant, the board of trustees of the named defendant, a university.

*Id.* The court concluded that naming the university in the administrative complaint was

sufficient to inform the board of trustees, the governing body of the university, that an

EEOC charge had been filed against the board as an entity. *Id.* (also noting that the board

had appeared through legal counsel throughout the administrative proceedings).

### ii.     *Exhaustion as to the Mercy Defendants*

The administrative records that the Mercy Defendants have provided do show that

the only defendants named in the administrative proceedings were Franklin General

Hospital, Dr. Hansen, and Kim Price. *See* Hospital Defendants' Motion To Dismiss,

Appendix, Exhibits A-C. Nevertheless, *Sedlacek* suggests that Whitney has *adequately*

*pleaded* a plausible factual basis for administrative exhaustion as to the Mercy

Defendants, as well. *Richter*, 686 F.3d at 850 ("'To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face.'" (quoting *Iqbal*, 556 U.S. at 678)). Her pleadings plausibly suggest that the Mercy Defendants are "substantially identical" to Franklin General Hospital and that they either knew or should have known that a claim was asserted against them. *See Sedlacek*, 752 F.2d at 336.

Specifically, as Whitney points out, she has alleged that the Mercy Defendants "managed" and were "doing business as" Franklin General Hospital and that certain supervisory personnel were "agents" of the Mercy Defendants. Where the Mercy Defendants were allegedly the managers and operators of the entity named in the administrative proceedings, it is a plausible inference that the Mercy Defendants either knew or should have known that the interrelation between them and Franklin General Hospital would cause them to be implicated, as well as Franklin General Hospital itself. *Sedlacek*, 752 F.2d at 336. Although the Mercy Defendants brand these allegations as merely conclusory, I do not agree. When I apply my common sense and judicial experience to the question of "plausibility," *Whitney*, 700 F.3d at 1128, I note that corporations, such as the Mercy Defendants, could only have "managed" or operated Franklin General Hospital through agents and employees. Thus, the allegation that Kim Price, for example, was an agent of the Mercy Defendants plausibly suggests that the Mercy Defendants either knew or should have known that they were implicated in Whitney's civil rights complaints. The same allegations also plausibly suggest an "identity of interest" between the Mercy Defendants and Franklin General Hospital sufficient to satisfy the notice requirement. *See Greenwood*, 778 F.2d at 451.

Whitney's allegations of administrative exhaustion of her claims in Counts I, II, III, and IV against the Mercy Defendants are not fatally inadequate.

### iii. *Dismissal on the basis of an affirmative defense*

Furthermore, failure to exhaust administrative remedies is treated as an affirmative defense, so that it is the defendant's burden to plead and prove it. *Miles v. Bellfontaine*

19

*Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007) (*per curiam*). Dismissal of a claim on the basis of such an affirmative defense ordinarily is not proper. *Id.* (holding that, although failure to exhaust administrative remedies is not a jurisdictional prerequisite to a Title VII claim, it is treated as an affirmative defense, and where the plaintiff had adequately alleged exhaustion, dismissal was improper). An affirmative defense, such as the Mercy Defendants' argument that they were not given proper notice in the administrative complaints, precisely because of the complex relationship between them and Franklin General Hospital, which would not have been apparent even to an employee of Franklin General Hospital, such as Whitney, is a particularly inappropriate basis for dismissal. This is another reason to deny the Hospital Defendants' Motion To Dismiss Counts I, I, III, and IV against the Mercy Defendants for lack of administrative exhaustion.

### c.     Summary

The Mercy Defendants are not entitled to dismissal of Counts I through IV of Whitney's Amended Complaint against them on the basis of lack of administrative exhaustion. Those parts of the Hospital Defendants' Motion To Dismiss seeking dismissal of these claims against the Mercy Defendants are denied.

### 2.     The FMLA claim

The only other part of the Hospital Defendants' Motion To Dismiss still in dispute is their challenge to Whitney's FMLA claim in Count V of her Amended Complaint. Whitney contends that she has adequately pleaded such a claim.

### a.     Arguments of the parties

The Hospital Defendants understand Whitney to be attempting to assert both "interference" and "retaliation" claims under the FMLA. The essence of the Hospital Defendants' argument for dismissal of Whitney's claim of "interference" with FMLA rights is that the allegations in Whitney's Amended Complaint show that she was actually

granted FMLA leave. They point out that, while Whitney alleges that she was disciplined for absences *prior* to her request for FMLA leave, she does not allege that she ever requested that those prior absences be treated as FMLA leave. The Hospital Defendants argue that, assuming that Whitney gave adequate notice of her need for a leave of absence as FMLA leave, she has pleaded that she was actually given that FMLA leave. They contend that Whitney has not pleaded any way in which the Hospital Defendants interfered with or restrained her FMLA leave.

The Hospital Defendants also argue that Whitney has not adequately pleaded a claim of FMLA "retaliation." They argue that allegations that Whitney was disciplined for non-FMLA absences do not plausibly suggest FMLA retaliation. They also argue that Whitney has not alleged that her termination for engaging in non-productive behaviors, having an unprofessional attitude, and poor attendance was in retaliation for exercising FMLA rights.

In response, Whitney argues that the factual allegations in her Amended Complaint explicitly establish FMLA "interference" and "retaliation" claims. She points to her allegations that, after she informed her supervisor, Koreen Van Horn, that she would need to take FMLA leave, because of her serious health conditions, Van Horn and Kruse issued her a disciplinary action for trifling rules violations. She contends that she had already made a request for leave that triggered FMLA protections, and that her allegations show that the Hospital Defendants took adverse action in close temporal proximity to that request, which she argues strongly suggests causation. She also contends that she was subjected to disciplinary treatment that employees who had not requested FMLA leave did not suffer, also suggesting discriminatory or retaliatory intent. Indeed, she asserts that, because she was fired shortly after returning from FMLA leave, there is sufficient inference of retaliation or interference.

In reply, the Hospital Defendants assert that Whitney still has not pointed to any allegations plausibly suggesting interference with FMLA rights, because she was granted the FMLA leave that she requested. As to FMLA "retaliation," the Hospital Defendants argue that Whitney has not alleged that the discipline to which she was subjected after her request for FMLA leave was because of her FMLA request, where she admits that she was disciplined for non-FMLA absences, failing to "punch out," and other misconduct.

### b. Analysis

#### i. Types of FMLA claims

As the parties recognize,[6] in *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996 (8th Cir. 2012), the Eighth Circuit Court of Appeals explained that it has recognized three types of claims arising under 29 U.S.C. §§ 2615(a)(1) and 2615(a)(2), which "establish prohibited acts" under the FMLA:

> The first type, arising under § 2615(a)(1), occurs where an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act. *See Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir.2006); 29 C.F.R. § 825.220(b). An employee proceeding on this theory need not show that an employer acted with discriminatory intent. *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 979 (8th Cir.2005). Our cases sometimes describe this type of claim as an "interference" claim, but that terminology may not illuminate, because all prohibited acts under § 2615(a) appear under the heading "Interference with rights." For clarity of analysis, we think it helpful to describe this as an "entitlement" claim—an employee claims the denial of a benefit to which he is entitled under the statute.

---

[6] Indeed, Whitney's attorneys were the plaintiff's attorneys in *Pulczinski*.

A second type of claim, arising under § 2615(a)(2), is analogous to retaliation claims that are familiar under Title VII and other federal antidiscrimination statutes. *See, e.g.*, 42 U.S.C. § 2000e–3(a); *Barker v. Mo. Dep't of Corr.,* 513 F.3d 831, 834 (8th Cir.2008); *see* 29 C.F.R. § 825.220(e); 60 Fed.Reg. 2180, 2218 (Jan. 6, 1995) (explaining that the FMLA's "opposition clause is derived from Title VII"). If an employee opposes any practice made unlawful under the FMLA—for example, if an employee complains about an employer's refusal to comply with the statutory mandate to permit FMLA leave—then the employer may not for that reason take adverse action against the employee who is engaged in the opposition. As under Title VII, this claim is naturally described as a "retaliation" claim.

A third type of claim recognized by this court's precedent arises when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA. In this scenario, the employer does not prevent the employee from receiving FMLA benefits. Rather, it is alleged that after the employee exercised his statutory rights, the employer discriminated against him in the terms and conditions of employment. An employee making this type of claim must prove that the employer was motivated by the employee's exercise of rights under the FMLA. *Sisk v. Picture People, Inc.*, 669 F.3d 896, 900 (8th Cir.2012); *Stallings*, 447 F.3d at 1051. The textual basis for such a claim is not well developed in our cases, but the claim likely arises under the rule of § 2615(a)(1) that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights defined by the FMLA. *See Quinn v. St. Louis Cnty.*, 653 F.3d 745, 754 n. 7 (8th Cir.2011); *Scobey v. Nucor Steel–Ark.*, 580 F.3d 781, 790 n. 9 (8th Cir.2009); *Phillips v. Mathews*, 547 F.3d 905, 913–15 (8th Cir.2008) (Colloton, J., concurring). To distinguish the "entitlement" claim under § 2615(a)(1), and the "retaliation" claim under § 2615(a)(2), we think it helpful to describe this sort of complaint as a "discrimination" claim. *See* 29 C.F.R. § 825.220(c) ("The [FMLA]'s prohibition

against 'interference' prohibits an employer from discriminating or retaliating against an employee … for having exercised or attempted to exercise FMLA rights.").

*Pulczinski*, 691 F.3d at 1006-07; *accord Brown v. City of Jacksonville*, 711 F.3d 883, 890-91 (8th Cir. 2013); *Bosley v. Cargill Meat Solutions Corp.*, 705 F.3d 777, 779-80 (8th Cir. 2013). It appears from her Resistance that Whitney believes that she has adequately pleaded all three types of FMLA claims.

### ii. Whitney's "interference/entitlement" claim

Although Whitney argues that she has explicitly pleaded an "interference" claim, she has not identified where in her Amended Complaint she has alleged that the Hospital Defendants "refuse[d] to authorize leave under the FMLA or t[ook] other action to avoid responsibilities under the Act." *Pulczinski*, 691 F.3d at 1005. Rather, she explicitly alleges that she was granted the FMLA leave as requested during August of 2012, and that she gradually worked her way back up to working full time by October 23, 2012. To the extent that Whitney is arguing that she was discouraged from using FMLA leave—because Van Horn and Kruse disciplined her for prior non-FMLA absences after she requested FMLA leave—the Eighth Circuit Court of Appeals clarified in *Pulczinski* that an "interference/entitlement" claim cannot be based on conduct that would discourage an employee of ordinary firmness from taking FMLA leave, even if the plaintiff was not herself deterred, but must be based on allegations (and eventual proof) "that the employer denied h[er] entitlements under the FMLA." *Id*. at 1007 (citing *Quinn v. St. Louis County*, 653 F.3d 745, 753-54 (8th Cir. 2011)). There are no allegations in the Amended Complaint that Whitney's employers denied her any entitlement under the FMLA. Thus, she has failed to state an "interference/entitlement" claim, and the Hospital Defendants are entitled to dismissal of any such claim. *Id*.; *cf. Brown*, 711 F.3d at 891 (holding that, where the plaintiff did not argue that the defendants prevented her from taking FMLA leave, she had no "entitlement" claim).

### iii.     Whitney's "retaliation" claim

Interestingly, what the court in *Pulczinski*, described as a "retaliation" claim, pursuant to § 2615(a)(2)—that is, a claim based on adverse action for opposing or complaining about any practice made unlawful under the FMLA, 691 F.3d at 1006-07— is actually identified in § 2615(a)(2) as "discrimination." 29 U.S.C. § 2615(a)(2) ("(a) Interference with rights. . . . (2) Discrimination[:]  It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.").  Conversely, what the court described as a "discrimination" claim—that is, a claim that "arises when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA," but "does not prevent the employee from receiving FMLA benefits," and for which the court struggled to find a "textual basis," *see Pulczinski*, 691 F.3d at 1006—is, at least in a more colloquial sense, a "retaliation" claim, that is, a claim of adverse action for exercising rights.

This point is not of mere academic interest here, because Whitney asserts that she has adequately pleaded a "retaliation" claim under the FMLA.  The problem is that she has not pointed to any allegation in her Amended Complaint that she suffered adverse action for opposing or complaining about any practice made unlawful under the FMLA. *See* 29 U.S.C. § 26154(a)(2); *Pulczinski*, 691 F.3d at 1006-07 (describing such a claim as a "retaliation" claim).  Rather, she alleged that, when she went to the meeting to discuss her request for FMLA leave, and Van Horn and Kruse "greeted her with disciplinary action," she told Van Horn and Kruse that she believed that "Defendants" were retaliating against her because of her complaints of *sexual harassment, abuse, and exploitation,* not for any complaints about denial or evasion of FMLA benefits.  Amended Complaint, ¶¶ 41-45.

Because Whitney has not alleged that the Hospital Defendants took adverse action against her for opposing or complaining about their failure to comply with FMLA mandates, the Hospital Defendants are entitled to dismissal of any FMLA "retaliation" claim.

### iv. Whitney's "discrimination" claim

Whitney's assertion that she has pleaded a "discrimination" claim as described in *Pulczinski*, 691 F.3d at 1007, stands on better ground. Again, such a claim arises when an employer takes adverse action against an employee *because the employee exercised rights to which he is entitled under the FMLA*, even though the employer did not prevent the employee from receiving FMLA benefits. *Id.* More specifically, a "discrimination" claim is "that after the employee exercised h[er] statutory rights, the employer discriminated against h[er] in the terms and conditions of employment." *Id.* Perhaps recognizing the uncertainty about the proper denomination of claims based on adverse actions against an employee who exercised FMLA rights as either "retaliation" or "discrimination" claims, the Eighth Circuit Court of Appeals has explained that whether such a claim was "characterized as a 'discrimination' claim under § 2615(a)(1) [and *Pulczinski*, 691 F.3d at 1006,] or as a 'retaliation' claim under § 2615(a)(2) . . . we require proof of the employer's discriminatory intent." *Brown*, 711 F.3d at 891 (citing *Pulczinski*, 691 F.3d at 1007). The court explained, further, "This proof may come from direct evidence or indirect evidence using the *McDonnell Douglas* burden-shifting framework." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06 (1973)).

Where, as here, there is no direct evidence of discrimination in violation of the FMLA, Whitney must state a *prima facie* case demonstrating a causal connection between her FMLA-protected leave and the adverse employment action. *Id.* (citing *Pulczinski*, 691 F.3d at 1007). The Hospital Defendants assert that Whitney has not adequately

pleaded any causal connection, because her Amended Complaint alleges that she was disciplined and terminated for non-FMLA absences, engaging in non-productive behaviors, having an unprofessional attitude, and poor attendance, *not* that her use of FMLA leave played a part in their decisions to discipline and fire her. *Compare id.* at 891. They also argue that the "temporal proximity" between Whitney's return from FMLA leave and her termination simply is not enough. I disagree with both of their contentions.

First, it is clear that Whitney has not pleaded that she *was* disciplined or terminated for non-FMLA absences, engaging in non-productive behaviors, having an unprofessional attitude, and poor attendance, but that those were the reasons *given for* her discipline and termination. *See* Amended Complaint, ¶¶ 41-42, 53. She also alleges that other employees were not similarly disciplined, *see id.* at ¶¶ 44, 55, and that the Hospital Defendants could not or would not identify any specific instances of her alleged misconduct, *see id.* at ¶¶ 54, 57. Considering these allegations by "'draw[ing] on [my] judicial experience and common sense,'" W*hitney*, 700 F.3d at 1128, they plausibly suggest that the reasons given for Whitney's discipline and termination were not the real reasons, but were pretexts for a retaliatory or discriminatory animus.[7] This showing of pretext is sufficient to *plead* the required causal connection. *Compare Pulczinski*, 691

---

[7] I recognize that, in her Amended Complaint, Whitney expressly pleads only that the Hospital Defendants' conduct toward her differed from their treatment of "other employees who had not reported sexual harassment, abuse, and exploitation by hospital doctors," *see, e.g.,* Amended Complaint, ¶¶ 44, 55, not that their treatment of her differed from their treatment of employees who had not taken FMLA leave. However, in Count V of the Amended Complaint, Whitney does replead all of the paragraphs of her factual background, *see id.* at 99, and expressly pleads that the "Defendants retaliated against [her] and fired her as a result of her exercise of her rights under the FMLA." *Id.* at 106. I believe that, under these circumstances, the Amended Complaint inartfully, but plausibly, pleads adverse action for taking FMLA leave.

F.3d at 1007 (finding that the plaintiff had presented insufficient evidence to show that proffered explanations for adverse actions were a pretext for FMLA discrimination). Furthermore, it is true that a "significant length of time—eight months—between [the employee's] return from FMLA leave and her employment termination" in *Brown* "'diluted any inference of causation such that the temporal connection could not justify a causal link as a matter of law.'" 711 F.3d at 891 (quoting *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1003 (8th Cir. 2005)). Here, however, Whitney has alleged that she was fired within two months of her return from FMLA leave and that, during that brief period, the defendants also took disciplinary actions against her that were allegedly because she had taken FMLA leave. This "temporal proximity plus" evidence plausibly suggests the required causal connection.

The Hospital Defendants are not entitled to dismissal of Whitney's FMLA "discrimination" claim.

### c. Summary

The Hospital Defendants are only entitled to dismissal of parts of Whitney's FMLA claim in Count V. They are entitled to dismissal of Whitney's "interference/entitlement" claim, within the scope of § 2615(a)(1) and *Pulczinski*, 691 F.3d at 1006, and to dismissal of Whitney's FMLA "retaliation" claim, within the scope of § 2615(a)(2) (denominating the claim "discrimination) and *Pulczinski*, 691 F.3d at 1006-07 (denominating the claim "retaliation"). On the other hand, they are not entitled to dismissal of Whitney's "discrimination" claim, based on adverse action allegedly taken because Whitney took FMLA leave, within the scope of § 2615(a)(1) and *Pulczinski*, 691 F.3d at 1007. Thus, their Motion To Dismiss will be granted in part and denied in part as to Count V of Whitney's Amended Complaint.

## III.    CONCLUSION

Upon the foregoing, as to the parts of the Motion still in dispute after voluntary and involuntary dismissals of parties and claims, the Hospital Defendants' December 3, 2013, Motion To Dismiss With Prejudice (docket no. 28) is **granted in part and denied in part**, as follows:

1.    The parts of the Motion seeking dismissal of Counts I, II, III, and IV of the Amended Complaint against the Mercy Defendants for lack of administrative exhaustion are **denied**;

2.    The part of the Motion seeking dismissal of Count V against the Hospital Defendants is

      a.    **Granted** as to Whitney's FMLA "interference/entitlement" claim, within the scope of § 2615(a)(1) and *Pulczinski*, 691 F.3d at 1006;

      b.    **Granted** as to Whitney's FMLA "retaliation" claim, within the scope of § 2615(a)(2) (denominating the claim "discrimination) and *Pulczinski*, 691 F.3d at 1006-07 (denominating the claim "retaliation"); but

      c.    **Denied** as to Whitney's FMLA "discrimination" claim, based on adverse action allegedly taken because Whitney took FMLA leave, within the scope of § 2615(a)(1) and *Pulczinski*, 691 F.3d at 1007.

3.    The remaining parts of the Motion are **denied as moot** owing to voluntary and involuntary dismissals of parties and claims.

4.    This case will proceed further on the following claims:

      a.    Counts I, II, III, IV, and V against Franklin County;[8]

---

[8] I will not *sua sponte* dismiss any parts of Count V against Franklin County, where Franklin County chose to answer the Amended Complaint, including Count V, rather than move to dismiss it.

b.      Counts I, II, III, IV, and the remaining part of Count V against Franklin General Hospital; Mercy Health Services—Iowa Corp.; and Mercy Health Network, Inc.; and

c.      Counts I, III, and the remaining part of Count V against Kim Price.

**IT IS SO ORDERED**.

**DATED** this 3rd day of February, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA