IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| **NICOLE WHITNEY,** Plaintiff, vs. **FRANKLIN GENERAL HOSPITAL; MERCY HEALTH SERVICES - IOWA CORP; MERCY HEALTH NETWORK, INC.; and KIM PRICE,** Defendants. | No. C13-3048 RULING ON MOTION TO COMPEL |

On the 22nd day of December 2014, this matter came on for telephonic hearing on the Motion to Compel and Request for Extension of Expert Disclosure Deadline (docket number 63) filed by the Defendants on December 1, 2014. Plaintiff was represented by her attorneys, Brooke Timmer and Emily McCarty. Defendants were represented by their attorneys, D. David DeWald and Matthew M. Enenbach.

## I. RELEVANT FACTS AND PROCEEDINGS

On August 29, 2013, Plaintiff Nicole Whitney filed a complaint seeking damages for sexual harassment, sex discrimination and retaliation, disability discrimination and retaliation, violations of the Family Medical Leave Act, sexual exploitation, and assault and battery. An amended complaint was filed on September 23, 2013. Defendants filed their answer and affirmative defenses on February 17, 2014.[1]

On January 9, 2014, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. Among other things, the parties agreed to deadlines for

---

[1] Certain defendants have been dismissed from the action.

disclosing expert witnesses and completing discovery. In reliance on those deadlines, the trial has been scheduled before Judge Mark W. Bennett on June 1, 2015. The deadlines for disclosing expert witnesses, completing discovery, and filing dispositive motions have been extended twice. The deadline for Defendants to disclose their expert witnesses was December 12, 2014, with Plaintiff required to disclose her rebuttal experts, if any, not later than January 12, 2015.

To support her claim for damages, Plaintiff retained Louise F. Fitzgerald, Ph.D. an Emeritus Professor of Psychology and Gender and Women's Studies at the University of Illinois at Urbana-Champaign. As part of the evaluation, Plaintiff submitted to a battery of psychological tests administered by Angela Lawson, Ph.D.[2] Dr. Fitzgerald submitted a detailed 41-page report. Also provided as appendices to Dr. Fitzgerald's report were a description of testing protocols administered and interpreted, a list of documents reviewed, scientific references, Dr. Fitzgerald's curriculum vita, a list of cases in which Dr. Fitzgerald has been involved in the last four years, and her fee schedule.[3]

Defendants have retained Dr. Jane McNaught, a psychologist in Minnesota, to serve as their expert. According to Mr. DeWald, Dr. McNaught was timely identified, but is unable to reach any conclusions until she has reviewed the "raw data" from the psychological tests administered under Dr. Fitzgerald's direction. At the hearing, Mr. DeWald advised the Court that if Dr. Fitzgerald is ordered to produce the raw data,

---

[2] The psychological tests included the Crime-Related Post-Traumatic Stress Disorder Scale (CR-PTSD), Millon Clinical Multiaxial Inventory-III (MCMI-III), Minnesota Multiphasic Personality Inventory (MMPI-2), Personality Disorder Screen (PDS), Structured Clinical Interview for DSM-IV-Non-Patient (SCID-NP), Structured Inventory of Malingered Symptomatology (SIMS), Structured Interview of Reported Symptoms (SIRS), and Trauma Symptom Inventory-2 (TSI-2).

[3] Dr. Fitzgerald's report and appendices are attached to Defendants' instant motion as Exhibit B (docket number 63-2).

he would then forward the raw data to his expert. Plaintiff's counsel have consistently told Defendants' counsel — and confirmed their position at the hearing — that Plaintiff is willing to have her expert send the raw data directly to Defendants' expert.[4] Defendants' counsel believe, however, that it is necessary for them to personally review the raw data.[5]

On December 1, 2014, Defendants filed the instant motion to compel. Defendants ask that Plaintiff be ordered to produce the raw data generated by Plaintiff's expert during the administration of eight psychological tests. Defendants also ask the Court to extend the deadline for disclosing their expert witnesses until 30 days after the documents are produced or, alternatively, until 30 days after the Court rules on the motion to compel. Plaintiff resists Defendants' motion, arguing that production of the raw data to anyone other than a licensed psychologist violates state law, would require Plaintiff's expert to violate her ethical obligations, and would cause Plaintiff's expert to breach copyrights held by the publishers of the tests.

## II. DISCUSSION

A party is required to disclose to the other parties the identity of any witness it intends to use to present expert testimony. FED. R. CIV. P. 26(a)(2)(A). Generally, the disclosure must be accompanied by a written report containing, among other things, "the

---

[4] In an email to Mr. DeWald on December 1, 2014, Ms. Timmer wrote: "We always conveyed we had no problem giving the data to your expert but that both Illinois and Iowa law prevented Dr. Fitzgerald from giving that information to non-qualified professionals — in other words, individuals who are not trained to interpret the data." *See* Exhibit C attached to Defendants' Motion to Compel (docket number 63-3 at 10). In her resistance to the instant motion, Plaintiff notes that "Defendants' expert witness is a licensed psychologist and is eligible to receive psychological testing data from Dr. Fitzgerald." Plaintiff's Brief in Resistance (docket number 65-1) at 4.

[5] At the time of hearing, Mr. DeWald advised the Court that he has not asked his expert whether *she* would provide the raw data to him after obtaining it from Plaintiff's expert.

facts or data considered by the witness" in forming the witness' opinions. FED. R. CIV. P. 26(a)(2)(B)(ii). Defendants argue that the "data" considered by Dr. Fitzgerald in reaching her opinions includes the raw data generated by the administration of the psychological tests.

In her report, Dr. Fitzgerald describes in some detail her opinions and conclusions, together with the facts underlying those opinions. Starting on page 22 of her report, Dr. Fitzgerald describes the information obtained during an interview with Plaintiff. Starting on page 33, the report identifies the various psychological tests which were administered, including Dr. Fitzgerald's analysis of Plaintiff's scores. Plaintiff and Dr. Fitzgerald assert, however, that production of the raw test data would violate state law.

> Except as otherwise provided in this section, a person in possession of psychological test material shall not disclose the material to any other person, including the individual who is a subject of the test. In addition, the test material shall not be disclosed in any administrative, judicial, or legislative proceeding. However, upon the request of an individual who is the subject of a test, all records associated with a psychological test of that individual shall be disclosed to a psychologist licensed pursuant to chapter 154B designated by the individual. An individual's request for the records shall be in writing and shall comply with the requirements of section 228.3, relating to voluntary disclosures of mental health information, except that the individual shall not have the right to inspect the test materials.

Iowa Code § 228.9. The State of Illinois, where Dr. Fitzgerald resides, has a similar statute. *See* 740 Ill. Comp. Stat. 110/3. Furthermore, in a supporting affidavit, Dr. Fitzgerald asserts that "[t]he ethical requirements of my profession, and the copyright

4

provisions associated with the above-identified instruments, further prohibit me from releasing raw test data or materials to anyone other than a licensed psychologist."[6]

The tension between the disclosure requirements of RULE 26(a)(2)(B), and the statutory and ethical issues raised by the disclosure of raw test data, has been discussed by a handful of courts, with varying results. In *Walton v. North Carolina Dept. of Agriculture*, 2011 WL 2893622 (E.D.N.C.), the court directed the plaintiff to submit to two mental examinations at the defendant's request. The plaintiff later filed a motion to compel, seeking an order requiring the examining expert to produce copies of the psychological testing materials. The defendant did not oppose the motion, but the expert objected, "explain[ing] that she is ethically and legally unable to provide the materials without a court order directing her to disclose them and setting forth specific requirements for their protection." *Id.* at *1. Finding that production of the materials would impose upon the expert "an undue burden by requiring her to violate ethical and contractual obligations," the court concluded that the motion to compel should be denied. *Id.* at *2.

A similar result was reached in *Collins v. TIAA-CREF*, 2008 WL 3981462 (W.D.N.C.). There, the plaintiff served the defendant's expert with a subpoena demanding production of the psychological test results. The expert responded by saying "he could only produce all of the materials requested to a licensed psychologist due to his ethical and contractual obligations surrounding the actual testing materials." *Id.* at *3. Alternatively, the expert agreed to "copy, dictate and transcribe test responses and scores from the copyrighted/protected test materials" for a fee. *Id.* The court found "[t]hese are reasonable accommodations to avoid the very serious consequence of the validity of these important tests being compromised." *Id.* at *5. The court concluded that the expert was not required to provide the raw testing materials to the plaintiff, but gave the plaintiff

---

[6] Affidavit of Louise Fitzgerald, Ph.D., at 2, ¶ 5 (docket number 65-2).

additional time "in which to determine whether she is able to retain a licensed psychologist to whom Dr. Varley may release these materials or whether she would prefer to compensate Dr. Varley at his hourly rate to provide her with her responses and data without the proprietary test materials." *Id. See also Chiperas v. Rubin*, 1998 WL 765126 (D.D.C.) (finding that the court need not resolve the issue after the defendant retained an expert, and the two experts agreed to "work with" each other to share raw data).

In support of their position, Defendants cite *Taylor v. Erna*, 2009 WL 2425839 (D. Mass.). A careful reading of *Taylor* reveals, however, that the testing material was ordered provided "through" the opposing party's expert. In *Taylor*, the plaintiff retained a neuropsychological expert, who conducted neuropsychological testing. The defendants argued that the expert's report failed to comply with FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)(B)(ii) "by virtue of the absence of the raw data and testing material." *Id.* at *1. The defendants moved to compel the production of the raw test data and related testing material. The plaintiff opposed the motion on three grounds: (1) that it would require the expert to violate ethical guidelines of the American Psychological Association ("APA"), (2) the defendant's expert, also a psychologist, had already been given the full raw data set and test materials, had written a report critical of the plaintiff's expert's methodology, and the defendants were therefore fully able to cross-examine the plaintiff's expert, and (3) the plaintiff offered to provide the test data to defense counsel without the test materials and protocol. *Id.* The court first noted that RULE 26 generally requires an expert's report to include "the data or other information considered by that witness" in forming the expert's opinions. However, the court also recognized "[t]he apparent conflict between the demands of the Federal Rules and the APA's Ethical Principles." *Id.* at *2. After reviewing the cases, the *Taylor* court opined that most courts have taken a middle ground.

> The most common resolution for this type of dispute has been some compromise between full, unconditioned disclosure and

> total exemption from the Federal Rules of Civil Procedure. One court found that testing materials need only be turned over to opposing counsel's qualified expert witness. (citing *Chiperas*) Other courts have resolved the conflicting interests by issuing a protective order.

*Taylor*, 2009 WL 2425839 at *2. Acknowledging the importance of preserving the integrity of test materials, the *Taylor* court found that "while [the defendants,] *through their expert*, have a right to review both the raw data and the test materials, [the expert's] disclosure should be conditioned on execution of the Non-Disclosure Agreement protective order proposed by the defendants." *Id.* at *3 (emphasis added). That is, it appears the *Taylor* court not only required the execution of a protective order, it also provided that production of the raw data and the test materials to the opposing parties was "through their expert."

I believe the statutory limitations found in Iowa Code § 228.9 and its Illinois counterpart are clear and unambiguous. Dr. Fitzgerald is prohibited from disclosing the test material to any other person, including Plaintiff. Section 228.9 specifically provides that "the test materials shall not be disclosed in any administrative, judicial, or legislative proceeding." However, there is one exception. Upon a written request by Plaintiff — the individual who was the subject of the tests — Dr. Fitzgerald "shall" disclose all records associated with the psychological tests to a licensed psychologist designated by Plaintiff. (In this case, Plaintiff has agreed to make such a request for production of the raw test data to Defendant's expert in Minnesota.) Given the statutory mandate, together with the ethical and copyright considerations raised by Plaintiff's expert, the Court concludes that Dr. Fitzgerald is not required to provide Plaintiff with the raw test data, for production to Defendants' counsel. Rather, the Court finds that Plaintiff should be ordered to make a written request to Dr. Fitzgerald, pursuant to Iowa Code § 228.9, to provide the raw test data to Defendants' expert (Dr. McNaught), a licensed psychologist.

## ORDER

IT IS THEREFORE ORDERED that the Motion to Compel (docket number 63) filed by the Defendants is **GRANTED in part** and **DENIED in part** as follows:

1. Not later than **December 30, 2014**, Plaintiff must provide Dr. Fitzgerald with a written request to provide the raw test data to Dr. McNaught.

2. Upon receipt of the written request, Dr. Fitzgerald must produce the raw test data to Dr. McNaught not later than **January 5, 2015**.

3. The deadline for Defendants to file their expert's report in compliance with RULE 26(a)(2)(B) is **EXTENDED** to **February 5, 2015**.

4. The deadline for Plaintiff to disclose her rebuttal experts, if any, is **EXTENDED** to **February 19, 2015**.

*The parties are reminded that June 1, 2015 remains a firm trial date.*

DATED this 23rd day of December, 2014.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA