**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

NICOLE WHITNEY,

              Plaintiff,

vs.

FRANKLIN GENERAL HOSPITAL;
MERCY HEALTH SERVICES—IOWA
CORP.; MERCY HEALTH NETWORK,
INC., and KIM PRICE,

             Defendants.

No. C 13-3048-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION TO AMEND
COMPLAINT**

---

**TABLE OF CONTENTS**

I.    **INTRODUCTION**................................................................... 2
    A.   *Factual Background* ....................................................... 2
    B.   *Procedural Background* ................................................... 4

II.   **LEGAL ANALYSIS** ............................................................ 6
    A.   *The Defendants' Motion For Summary Judgment* ........................... 6
         1.   *Applicable standards* ........................................... 6
         2.   *Whitney's sexual harassment claims* ................................. 8
             a.   *Arguments of the parties* ....................................... 8
             b.   *Analysis* ...................................................... 9
         3.   *Whitney's retaliation, disability, and FMLA claims* ............... 11
             a.   *Arguments of the parties* ...................................... 11
             b.   *Analysis* ..................................................... 12
         4.   *Liability of the Mercy Defendants*................................. 13
             a.   *Arguments of the parties* ...................................... 13
             b.   *Analysis* ..................................................... 13
          5.   *Liability of Kim Price*........................................... 18
             a.   *Arguments of the parties* ...................................... 18
             b.   *Analysis* ..................................................... 19

    **B.**      *Whitney's Motion For Leave To Amend* ..................................... **19**
          **1.**      *Arguments of the parties* ............................................... **19**
          **2.**      *Analysis* ................................................................ **20**
**III.**   **CONCLUSION** ........................................................................ **24**

## I.    INTRODUCTION

### A.    Factual Background

Despite the parties' voluminous statements of facts, I find that the facts sufficient to put in context plaintiff Nicole Whitney's claims and the parties' arguments concerning summary judgment can be set forth rather briefly. In 2006, Whitney was hired as a medical records receptionist at defendant Franklin General Hospital (the Hospital), and she continued in that position until she was terminated on December 3, 2012. Whitney was employed and paid directly by the Hospital, but Mercy Health Services-Iowa Corp., and Mercy Health Network, Inc., (the Mercy Defendants) controlled operations of the Hospital under agreements pursuant to which Mercy would provide management services and certain key personnel, including a chief executive officer/administrator, to operate the Hospital. The parties dispute whether the Mercy Defendants, or their employees, had the authority to terminate employees of the Hospital or merely had "input" on hiring and firing decisions of employees employed directly by the Hospital. The Mercy Defendants hired defendant Kim Price to serve as Chief Executive Officer of the Hospital in July 2010.

Whitney alleges that, from 2006 through 2009, Dr. Brian Hansen, the Hospital's Medical Director and her personal physician, engaged in sexual harassment and sexual exploitation of her.  Whitney did not report any sexual misconduct by Hansen while it was occurring and did not know that Hansen was sexually exploiting other female employees at the Hospital during and after the time that he harassed and exploited her. On May 18, 2012, two other women reported sexual harassment by Hansen, and, after an investigation revealed that Hansen had sexually harassed at least eight women, Hansen was fired on June 1, 2012.  On June 7, 2012, after Hansen had already been fired, Whitney reported to the defendants' investigator what she described as a "consensual" sexual relationship with Hansen, although Whitney contends that her statements and conduct during that report should have indicated that the sexual relationship was not "consensual."  It was not until August 2012 that Whitney expressly reported to her superiors that Hansen had actually sexually harassed and exploited her.  Whitney admits that "nobody knew" about Hansen's conduct with her, or any relationship between them, until 2012.

Between December 5, 2011, and September 26, 2012, Whitney used twelve weeks of Family and Medical Leave Act (FMLA) leave, including leave for treatment for depression, anxiety, and symptoms of post-traumatic stress disorder in August 2012. Upon her return from leave in the fall of 2012, Whitney began working half days. Although Whitney had requested a reduced schedule, she contends that the defendants dictated that she start by working half days "for a week or two."  Whitney also asserts that, in October and November of 2012, she requested leave on a number of specific days, because of anxiety and depression, and that she requested intermittent leave as an accommodation, but that the defendants never engaged in any dialogue with her about her possible leave arrangements, just documented her absences.  The defendants contend

that Whitney never told them more about her condition or what leave arrangements would accommodate her.

The defendants contend, and Whitney disputes, that throughout her employment, Whitney displayed problems with attendance, productivity, and "professionalism" in the workplace, which distracted her co-workers. Whitney contends that her performance reviews were good, although they admittedly included identification of areas for improvement. The defendants contend that Whitney took excessive time off and violated the Hospital's time-keeping procedures by failing to "clock out" for lunch. After a third disciplinary action, Whitney was given a "last-chance" warning on November 5, 2012, which notified her that further discipline could result in termination. During a meeting on November 5, 2012, with the clinic manager and the Hospital's human resources manager, Whitney was presented with a Performance Action Plan that required her to limit the amount of time that she spent visiting co-workers and visitors, to treat co-workers with respect, and to improve her productivity. A follow-up meeting pursuant to the Plan was scheduled for December 6, 2012. Whitney was not given any negative feedback after the November 5, 2012, meeting, but she was terminated on December 3, 2012, before the scheduled follow-up meeting occurred.

Whitney filed an administrative charge of discrimination on September 12, 2012, with the Iowa Civil Rights Commission (ICRC), then amended that administrative charge on January 17, 2013. After Whitney received a right-to-sue letter from the ICRC, she filed this lawsuit.

## B.    Procedural Background

Whitney filed her original Complaint (docket no. 2) in this matter on August 29, 2013, and her Amended Complaint (docket no. 4) on September 23, 2013. Only certain

claims in her Amended Complaint[1] remain pending in this case, after voluntary dismissals of certain parties and after I granted in part and denied in part the defendants' December 3, 2013, Motion To Dismiss With Prejudice (docket no. 28). *See* Memorandum Opinion And Order Regarding Hospital Defendants' Motion To Dismiss (docket no. 44), *published at Whitney v. Franklin Gen. Hosp.*, 995 F. Supp. 2d 917 (N.D. Iowa 2014). The remaining claims against the Hospital and the Mercy Defendants are the following: sexual harassment and retaliation in violation of the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216, in **Count I**; sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, in **Count II**;[2] disability discrimination and retaliation in violation of the ICRA in **Count III**; failure to accommodate disabilities, disability discrimination, and retaliation in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, in **Count IV**; and "discrimination" in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, based on adverse action allegedly taken because Whitney took FMLA leave, within the scope of § 2615(a)(1) and *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1007 (8th Cir. 2012), in the remaining part of **Count V**. The remaining

---

[1] This is the current pleading, although Whitney has now moved for leave to file a Second Amended Complaint to add additional claims. Her motion for leave to amend is also addressed in this opinion, below.

[2] **Counts I** and **II** are identified in the Amended Complaint as claims of "sexual harassment, sex discrimination, and retaliation," in violation of the ICRA and Title VII, respectively. In their briefing of the defendants' Motion For Summary Judgment, however, the parties have not addressed any "sex discrimination" claim—in the sense of taking an adverse employment action against Whitney because of her sex—separate and apart from her claim of "sexual harassment" and her claim of "retaliation" for complaints about sexual harassment. In other words, I understand references to "sex discrimination" in the Amended Complaint to be uses of an "umbrella" term for conduct prohibited by Title VII and the ICRA, not as references to claims that are factually distinct from Whitney's "sexual harassment" and "retaliation" claims.

claims against Price are **Count I**, **Count II**, and the remaining part of **Count V**. A jury trial on these claims is set to begin on June 1, 2015.

This case is before me on the defendants' February 2, 2015, Motion For Summary Judgment (docket no. 74). Whitney filed her Resistance (docket no. 79) to that Motion on February 26, 2015, the defendants filed their Reply (docket no. 89) on March 16, 2015, and Whitney filed her Sur-Reply (docket no. 100), with leave of court, on April 13, 2015. This case is also before me on Whitney's March 9, 2015, Motion For Leave To Amend Complaint (docket no. 87). The defendants filed their Resistance (docket no. 97) to that Motion on March 26, 2015, and Whitney filed no timely reply. Although the defendants requested oral arguments on their Motion For Summary Judgment, I have not found oral arguments to be necessary, in light of the applicable law and the parties' briefing and other submissions. Therefore, I will resolve both motions before me on the parties' written submissions.

## II.     LEGAL ANALYSIS

### A.     The Defendants' Motion For Summary Judgment

Despite the voluminous briefs by the parties concerning the defendants' Motion For Summary Judgment, I find that the determinative issues on that Motion can be addressed far more briefly. I will begin with a summary of the applicable standards for summary judgment, then turn to consideration of the various grounds for summary judgment asserted by the defendants.

#### 1.     Applicable standards

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler*

*Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, "[t]he movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*) (quoting *Celotex*, 477 U.S. at 323). In response, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

When the parties have met their burden, the district judge's task is as follows:

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ––– U.S. ––––, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . . "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson*, 643 F.3d at 1042-43. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012). However, summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

### 2. Whitney's sexual harassment claims

### a. Arguments of the parties

I will begin my consideration of the defendants' Motion For Summary Judgment with their arguments that Whitney cannot prevail on her sexual harassment claims under the ICRA and Title VII. The defendants argue that Whitney's sexual harassment claims are barred by the applicable statute of limitations and her failure to exhaust administrative remedies. Somewhat more specifically, the defendants argue that Whitney did not report any sexual harassment by Hansen during the 300-day limitations period before she filed her administrative complaint and that she cannot use a "continuing violation" theory, because none of the conduct within that limitations period that she did complain about was harassment—at most, it was retaliation. The defendants argue that Whitney has not alleged sexual harassment by anyone other than Hansen. They contend that, considering Hansen to be Whitney's "supervisor," the undisputed facts show that the sexual harassment claims fail on the basis of the *Ellerth-Faragher* affirmative defense. They also contend that, considering Hansen to be Whitney's "co-worker," the undisputed facts show that the defendants neither knew nor should have known about Hansen's harassment of her.

Whitney contends, however, that a reasonable jury could find the defendants liable for sexual harassment. She argues that Hansen's sexual harassment resulted in a tangible

employment action, consisting of disciplining her, placing her on probation, and eventually terminating her, after she reported the sexual harassment in 2012, so that the defendants are vicariously liable for that sexual harassment. She contends that the record shows that the sexual harassment "culminated" in her termination, which is sufficient for liability of the defendants for that sexual harassment. Indeed, she argues that her sexual harassment claim did not "accrue" until after the sexual harassment "culminated" in her discipline, probation, and termination. She contends that she filed a timely administrative complaint concerning these tangible employment actions, so that her sexual harassment claims are not time-barred

In reply, the defendants point out that Whitney does not argue that Hansen's sexual harassment ended any later than 2009, so that she is confusing sexual harassment, based on Hansen's conduct, with retaliation, based on much later conduct of others, in her attempt to hold the defendants liable. The defendants argue that, even if Whitney's sexual harassment claims are timely, the undisputed record shows that liability for Hansen's sexual harassment cannot be imputed to them, whether Hansen was Whitney's supervisor or co-worker. In her sur-reply, Whitney asserts that the defendants have not addressed her "accrual" argument and that the *Ellerth-Faragher* defense, on which the defendants rely to escape liability for Hansen's harassment as a supervisor, is inapplicable, because Hansen's sexual harassment "culminated" in tangible employment action.

### b. Analysis

A plaintiff must ordinarily file an administrative charge of sexual harassment within a certain number of days—in this case, 300 days—of the allegedly unlawful employment practice to pursue a claim in court. 42 U.S.C. § 2000e–5; Iowa Code § 216.15(13). Although a "continuing violation" theory, as explained in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–117 (2002), makes actionable a "series of separate but related acts" forming part of the same unlawful employment practice,

amounting to a "continuing violation," Whitney does not rely on that theory. Indeed, Whitney cannot do so, in the absence of some related instances of sexual harassment within the limitations period, even where the effects of earlier sexual harassment continue into the limitations period. *See Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980); *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1271–72 (8th Cir. 1990).

For the same reason, Whitney's "accrual" argument is without merit. The limitations period on a sexual harassment claim begins to run after the last act of sexual harassment, not when the last purported injury occurs. *See, e.g., Burkhart v. American Railcar Indus., Inc.*, 503 F.3d 472, 476 (8th Cir. 2010) (holding that the plaintiff's sexual harassment claim was untimely, because the limitations period began to run on the date of the last offensive e-mail to her). "Retaliation is a cause of action under Title VII separate and distinct from sex discrimination [or harassment]." *Id.* at 476. No reasonable juror could conclude that disciplinary actions, including termination, to which Whitney was subjected within the limitations period were sexual harassment, rather than retaliation, because those actions stemmed from Whitney's *report* of sexual harassment and involved entirely different actors, none of whom had been involved in Hansen's alleged sexual harassment of Whitney. *See id.* at 475-76 (the allegedly prohibited conduct within the limitations period was by employees other than the alleged harasser and, thus, were "retaliation for complaining to the human resources manager, not harassment based on sex"). Although Whitney's claim of wrongful (*i.e.*, retaliatory) termination accrued "'when [she] receive[d] notice of a termination decision,'" *see Sayger v. Riceland, Inc.*, 735 F.3d 1025, 1033 (8th Cir. 2013) (quoting *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328 (8th Cir. 1995)), she has failed to generate any genuine issues of material fact that her termination was the "culmination" of sexual harassment, rather than the "culmination" of distinct retaliatory conduct. *See Torgerson*, 643 F.3d at 1042 (to avoid summary judgment on a claim, "come forward with 'specific facts showing that

there is a genuine issue for trial.'" (quoting *Matsushita*, 475 U.S. at 586–87)). Because no reasonable juror could find that Whitney's sexual harassment claim is timely, the defendants are entitled to summary judgment on that claim. *See id.* at 1043.

### 3. *Whitney's retaliation, disability, and FMLA claims*

#### a. *Arguments of the parties*

My disposition of the defendants' arguments for summary judgment on Whitney's other claims will be even more concise. As to Whitney's retaliation claims, pursuant to Title VII and the ICRA, the defendants assert that there are no genuine issues of material fact that they had legitimate, nonretaliatory reasons for disciplining and terminating Whitney—various attendance, performance, and "professionalism" problems—even before and over the six months after she belatedly reported that Hansen had sexually harassed and exploited her. They argue that Whitney cannot establish that those reasons are a pretext for retaliation. As to Whitney's disability claims, pursuant to the ADA and the ICRA, the defendants contend that there are no genuine issues of material fact that Whitney is responsible for any breakdown in the interactive process to determine what, if any, reasonable accommodations Whitney required because of her depression and other mental problems (which Whitney contends were caused by Hansen's sexual harassment and exploitation); that Whitney has failed to identify any accommodation other than time off, which she was given; or that Whitney was actually capable of performing the essential functions of her job in light of her attendance, "professionalism," and performance problems. The defendants also contend that Whitney's FMLA "discrimination" claim fails, because there are no genuine issues of material fact that Whitney's FMLA-protected leave was not causally connected to the adverse employment actions against her. Indeed, they argue that the record, even viewed in a light most favorable to Whitney, establishes that Whitney's FMLA leave did not play any part in any defendants' decision to terminate her employment.

### b. *Analysis*

Notwithstanding the defendants' arguments, I find that Whitney has met her burden at summary judgment to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586–87)). Although I might not find in Whitney's favor on any of her claims on this record, if I were the trier of fact, that is not the standard. *Id.* As to Whitney's Title VII and ICRA claims of retaliation for complaining about sexual harassment, Whitney has identified evidence from which a reasonable juror could find in her favor. Somewhat more specifically, a reasonable juror could find that Whitney's attendance and performance problems were considered trifling prior to her complaints about Hansen's conduct, but after her complaints about Hansen's conduct, she was not only disciplined for sexual conduct with Hansen, but then subjected to unusual scrutiny of her conduct, discipline that was either not warranted or atypical, and fired, before the evaluation date set out in a "last chance" agreement and despite complying with that "last chance" agreement by improving her productivity. On this record, a reasonable juror could also conclude that the defendants' proffered reasons for her termination were a pretext for retaliation.

As to Whitney's disability discrimination and retaliation claims, a reasonable juror could find from conflicting evidence about the efforts of both parties to address Whitney's mental health problems that the defendants, not Whitney, are responsible for the breakdown of the interactive process to determine what reasonable accommodations she might require and that the defendants made a hasty decision to "get rid" of an employee who might need such accommodation or had complained that she needed such accommodation. Much of the same evidence that generates genuine issues of material fact as to the defendants' conduct and reasoning as it relates to Whitney's Title VII and ICRA sex claims likewise generates genuine issues of material fact on her disability

claims under the ADA and the ICRA. That is, perhaps, still more true as to Whitney's FMLA "discrimination" claim, because a reasonable juror could find on this record that the defendants "discriminated" against Whitney by taking adverse action against her because she took FMLA leave.

The defendants are not entitled to summary judgment on the basis of their arguments that the undisputed facts supposedly demonstrate that there were no violations of Title VII, the ICRA, the ADA, or the FMLA.

### 4. Liability of the Mercy Defendants

#### a. Arguments of the parties

The penultimate argument that the defendants raise in their Motion For Summary Judgment is that the Mercy Defendants are entitled to summary judgment, because there are no genuine issues of material fact that they were not Whitney's employer, where they did not directly or indirectly pay her. In response, Whitney argues that who compensates the plaintiff has not been the sole test of joint liability for discriminatory conduct for at least thirty years. Here, Whitney contends, it is appropriate to hold the Mercy Defendants jointly liable with the Hospital on her claims, even though the Hospital was the entity that directly employed and paid her, because the Mercy defendants controlled operations of the Hospital under agreements that provided that Mercy would provide management services and certain key personnel to operate the Hospital.

#### b. Analysis

For more than thirty years, the Eighth Circuit test of whether nominally distinct entities can be held to share liability under Title VII and the ADA as a "single" or "integrated" employer has required consideration of the following factors: "1) interrelation of operations, 2) common management, 3) centralized control of labor relations, and 4) common ownership or financial control." *Sandoval v. American Bldg. Maint. Indus. Inc.*, 578 F.3d 787, 793 (8th Cir. 2009) (citing *Baker v. Stuart Broad.*

*Co.*, 560 F.2d 389, 391 (8th Cir. 1977)); *accord Davis v. Ricketts*, 765 F.3d 823, 827 (8th Cir. 2014) (describing this four-factor test as the "integrated enterprise" or "single employer" test). All of these factors go to the extent of *the interrelationship between or among the entities* to determine the extent to which they should be treated as a *single entity*. *See, e.g., Davis*, 765 F.3d at 827 (explaining that the four-factor test determines whether "'the operations of two or more employers are considered so intertwined that they can be considered the single employer of the charging party'" (quoting EEOC Compliance Manual § 2–III(B)(1)(a)(iii)). These factors do *not* go to *the relationship of those entities to the prohibited conduct alleged*.

This four-factor test makes sense where only "employers" or "covered entities" can be held liable for prohibited conduct under the federal statute at issue. *See, e.g., Davis*, 765 F.3d at 826 ("Title VII imposes liability for employment discrimination only on an 'employer.'" (citing 42 U.S.C. § 2000e–2(a))); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013) ("The ADA makes it unlawful for a covered employer to discriminate against any 'qualified individual on the basis of disability.'" (42 U.S.C. § 2112(a) (actually stated in terms of "a covered entity," rather than a "covered employer")); 42 U.S.C. § 12111(2) (defining a "covered entity" under the ADA as "an employer, employment agency, labor organization, or joint labor-management committee"). The applicability of this test seems strained, however, in the present circumstances, in which one entity or related entities, the Mercy Defendants, allegedly provided management services, including a chief executive officer/administrator who was an employee of those entities, to operate a nominally separate entity, here, the Hospital, that directly employed and paid the plaintiff, here Whitney. That strain is demonstrated by the parties' attempts to bend the meaning of the pertinent factors of the "single employer" test to suit their view of the circumstances and the appropriate outcome on potential liability.

14

Where, as here, the plaintiff has asserted ICRA claims that are "mirror images" of her Title VII and ADA claims, however, I need not concern myself with the results of the four-factor "single employer" test to determine whether the Mercy Defendants, as well as the Hospital, can be liable on Whitney's claims under those federal statutes. This is so, because, unlike Title VII and the ADA, the ICRA imposes liability on any "person," not just an "employer," who engages in or aids and abets prohibited discriminatory or retaliatory conduct. *See* IOWA CODE § 216.11; *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1147 (8th Cir. 2008) (citing *Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999), and IOWA CODE § 216.11(2)); *see also Madison v. IBP, Inc.*, 330 F.3d 1051, 1057-58 (8th Cir. 2003) ("While Iowa looks to federal law for guidance when interpreting its own civil rights statutes, the Iowa Supreme Court has also declared that '[f]ederal law . . . is not controlling.' *Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999) (individual supervisory employee may be liable for discriminatory employment actions under ICRA even though Title VII does not authorize such claim)."). Notwithstanding the voluminous briefing in this case, the parties have not addressed the possibility of differences in the potential for liability of the Mercy Defendants on the Title VII and ADA claims, on the one hand, and the "mirror image" ICRA claims, on the other. It is, however, an aspect of the governing law" in this case that I cannot ignore. *See Anderson*, 477 U.S. at 248 (on summary judgment, the parties' factual contentions must be measured against governing law).

I have previously concluded that liability of "persons" under the ICRA is not limited to "supervisory" employees. *See Blazek v. U.S. Cellular Corp.*, 937 F. Supp. 2d 1003, 1022-24 (N.D. Iowa 2011). Here, I find nothing in the language of the ICRA or applicable case law restricting the meaning of "person" to a "natural person," as opposed to another business entity. Rather, one of the hallmarks of liability of a "person" under the ICRA is whether that "person" was in a position to control the employer's

hiring decisions. *Id.* at 1024 (citing *Vivian*, 601 N.W.2d at 826). Also, in *Johnson v. BE & K Construction Co., L.L.C.*, 593 F. Supp. 2d 1044 (S.D. Iowa 2009), then-Chief Judge Robert Pratt of the Southern District of Iowa concluded that a business entity (ADM) that was separate from the plaintiff's employer (BE & K) could be liable under IOWA CODE § 211.11 if it aided, abetted, compelled, or coerced BE & K into discharging the plaintiff from employment for a prohibited reason. 593 F. Supp. 2d at 1052; *see also Blazek*, 937 F. Supp. 2d at 1024 (quoting the pertinent part of *Johnson*). I find that Whitney has met her burden at summary judgment to "come forward with 'specific facts showing that there is a genuine issue for trial,'" *see Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586–87)), as to whether the Mercy Defendants either exercised the sort of "supervisory" authority or aided, abetted, compelled, or coerced the Hospital's allegedly prohibited conduct toward Whitney to be liable on Whitney's ICRA claims that "mirror" her Title VII and ADA claims. Those specific facts include, but are not limited to, evidence that the Mercy Defendants controlled operations of the Hospital under agreements pursuant to which Mercy provided management services and certain key personnel to operate the Hospital and the involvement of management personnel for the Hospital, who were provided by the Mercy Defendants, in the allegedly prohibited conduct. The Mercy Defendants are not entitled to summary judgment on these claims.

Nor are the Mercy Defendants entitled to summary judgment on Whitney's FMLA claim. "[T]he FMLA defines an employer as '"any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."'" *Rynders v. Williams*, 650 F.3d 1188, 1196 (8th Cir. 2011) (quoting *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002), in turn quoting 29 U.S.C. § 2611(4)(A)(ii)(I))); *see also Dalton v. Manor Care of West Des Moines, IA, L.L.C.*, 986 F. Supp. 2d 1044 (S.D.

Iowa 2013).[3]  Again, in this case, there is evidence that the Mercy Defendants controlled operations of the Hospital under agreements pursuant to which Mercy provided management services and certain key personnel to operate the Hospital.  There is also

---

[3] In *Dalton*, Chief Judge James E. Gritzner of the Southern District of Iowa explained that, under regulations applicable to the FMLA, in addition to the "integrated employer" or "single employer" test, involving the four factors identified in the body, above, there is a "joint employer" test.  986 F. Supp. 2d at 1048.   As Chief Judge Gritzner explained,

> The "joint employer" test applies "[w]here two or more businesses exercise some control over the work or working conditions of the employee," and the common situations where such a relationship is found to exist include:
>
> > (1) Where there is an arrangement between employers to share an employee's services or to interchange employees; (2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or, (3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.
>
> 29 C.F.R. § 825.106(a). The regulation also sets forth that:
>
> > A determination of whether or not a joint employment relationship exists is not determined by the application of any single criterion, but rather the entire relationship is to be viewed in its totality. For example, joint employment will ordinarily be found to exist when a temporary placement agency supplies employees to a second employer.
>
> 29 C.F.R. § 825.106(b)(1).

*Dalton*, 986 F. Supp. 2d at 1048.

evidence of the involvement of management personnel for the Hospital, who were provided by the Mercy Defendants, in the conduct allegedly prohibited by the FMLA. This evidence is sufficient to generate genuine issues of material fact as to the Mercy Defendants' liability for acting, directly or indirectly, in the interest of the Hospital towards Whitney. *Id.*; *Dalton*, 986 F. Supp. 2d at 1048; 29 C.F.R. § 825.106(b)(1).

The Mercy Defendants are not entitled to summary judgment on the ground that they cannot be held liable on any of Whitney's claims.

### 5. *Liability of Kim Price*

#### a. *Arguments of the parties*

The last issue raised in the defendants' Motion For Summary Judgment is that individual defendant Kim Price cannot be held liable on Whitney's claims. The defendants argue that the undisputed facts show that Price did not engage in any prohibited conduct under the ICRA. They argue that Price was not Whitney's direct supervisor and that Price and Whitney did not interact on a daily basis. They also contend that the only conduct by Price that Whitney could identify in her deposition as allegedly retaliatory was that Price did not even acknowledge her when she returned from FMLA leave. Whitney counters by pointing to evidence that she argues shows that Price discriminated against her because of her disability and retaliated against her for protected activity. That evidence is that Price was one step removed from Whitney in the chain of command; he admits that he was involved in the disciplinary actions taken against her; he personally signed the August 1, 2012, disciplinary action taken against Whitney for "participating" in sexual activity on Hospital premises; and he was involved in the decision to fire Whitney. In fact, Whitney argues, the jury could reasonably infer that Price made the final termination decision. In reply, the defendants argue that Whitney must show that Price *knew* about a retaliatory or discriminatory reason for firing Whitney, but she cannot make such a showing. In her sur-reply, Whitney argues that she has

already pointed to evidence demonstrating Price's knowledge of and involvement in the circumstances and decisions at issue.

### b.    Analysis

For much the same reason that Whitney has pointed to sufficient evidence of specific facts to generate genuine issues of material fact on the liability of the Mercy Defendants under the ICRA and the FMLA, she has generated genuine issues of material fact on the liability of Kim Price under the ICRA and the FMLA. *Torgerson*, 643 F.3d at 1042. Those specific facts include, but are not limited to, evidence that Price controlled operations of the Hospital and evidence suggesting, at the very least, that he was more than nominally involved in signing documents imposing adverse employment action on Whitney, but was actually aware of the pertinent circumstances and involved in the decision-making that is the basis for the allegedly prohibited discriminatory and retaliatory conduct.

The defendants are not entitled to summary judgment on Whitney's claims against Kim Price.

## B.    Whitney's Motion For Leave To Amend

### 1.    Arguments of the parties

The second motion now pending before me is Whitney's March 9, 2015, Motion For Leave To Amend Complaint (docket no. 87). She filed this motion, even though she acknowledges that the deadline for such a motion was March 6, 2014. In her Motion, Whitney asserts that she seeks to amend her complaint to include some additional facts, which she believes the defendants already know, as well as claims that her termination violated the Iowa Whistleblower Statute and the public policy of the State. She asserts that, while she seeks to add new legal theories, the facts on which the new theories are based are known to the defendants, will not require any further discovery, will not

introduce any new damages, and will not require any continuance of the current trial date. She argues that her failure to include the "whistleblower" and "discharge in violation of public policy" claims in her original Complaint or in her earlier Amended Complaint is not for lack of diligence. At the same time, she frankly admits, the failure was because her lawyers simply had not thought of those claims until now and that the claims became apparent upon completion of discovery and reflection on the evidence and applicable law. She contends that the defendants will not be prejudiced, because the jury instructions have not yet been drafted, and the new claims rely on the same facts as the old ones. She also argues that I have even permitted amendments to state new theories *after trial*, citing *Baker v. John Morrell*, 266 F. Supp. 2d 909 (N.D. Iowa 2003), *aff'd*, 382 F.3d 816 (8th Cir. 2004).

The defendants resist Whitney's belated attempt to further amend her Amended Complaint to add new claims. They contend that Whitney's frank admission that her attorneys just thought of the new theories demonstrates the lack of good cause or diligence to add such claims. They also point out that the circumstances here are distinguishable from those presented in *Baker*, where no new theories or facts were introduced by the post-trial amendment, but only claims under the ICRA that were mirror-images of the plaintiff's federal claims.

### 2. Analysis

As the defendants point out, the Eighth Circuit Court of Appeals has explained,

> The interplay between Rule 15(a) and Rule 16(b) is settled in this circuit. In *Popoalii [v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)], we stated that "[i]f a party files for leave to amend outside of the court's scheduling order, the party *must* show cause to modify the schedule." 512 F.3d at 497 (citing Rule 16(b) (emphasis added)). Moreover, we said so in the context of a discussion of the Rule 15 amendment standard, unmistakably concluding that

Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a). *Id*. Because *Popoalii* filed her motion to amend her complaint five months after the scheduling deadline for amending pleadings, "[u]nder [Rule] 16(b), *Popoalii* needed to show cause in order to be given leave to amend." *Id*.

The approach taken in *Popoalii* is derived directly from the plain language of Rule 16(b), which states both that district courts must issue a scheduling order limiting the time to amend the pleadings, and that a scheduling order "may be modified only for good cause." When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional. To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) "would render scheduling orders meaningless and effectively … read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir.1998); *see also Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir.2003) ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)."); *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir.2005), cert. denied, 549 U.S. 811, 127 S.Ct. 48, 166 L.Ed.2d 20 (2006) (applying the same approach); *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154–55 (1st Cir.2004) (same); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir.2000) (same); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992) (same).

*Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008).

As the court also explained in *Sherman*, "'The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements.'" *Id.* at (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006), and citing FED. R. CIV. P. 16(b), advisory committee note (1983 Amendment)). In *Sherman*, the court concluded that the "good cause" requirement was not met, for the following reasons:

> Even though preemption is a purely legal defense based on readily available federal law, Winco waited to seek leave to plead the affirmative defense until two and a half years after the suit was filed; a month after the close of discovery; a month after it raised the defense in its summary judgment motion; almost eighteen months after the deadline for amending pleadings; and eight full months after it was actually aware of the preemption defense's applicability. Winco's explanation for its "inadvertent failure to plead pre-emption as an affirmative defense" was that "at the close of discovery and during research and preparation for [Winco's] summary judgment motion … [Winco] determined the merits of the pre-emption argument." (Appellants' App. at 609.) But this is effectively a concession that Winco did not explore the applicability of the preemption defense before the summary judgment stage of the litigation. Had Winco been diligent, it would have performed this research at the outset of the litigation, and at least prior to the scheduled deadline for adding affirmative defenses. The very fact that our court treats preemption as an affirmative defense presupposes that, in a typical case, a diligent defendant will be able to plead the defense on the basis of the complaint alone, at the onset of the litigation. Here, no change in the law, no newly discovered facts, or any other changed circumstance made the preemption defense more viable after the scheduling deadline for amending pleadings. Given the absence of good cause, we must conclude that the district court abused its discretion in allowing Winco to amend its answer so long after the scheduling deadline.

*Sherman*, 532 F.3d at 717-18.

As in *Sherman*, Whitney's concession that her attorneys simply did not think of the new theories for the additional claims that she seeks leave to assert in her Second Amended Complaint is effectively a concession that Whitney did not explore the applicability of those theories before the summary judgment stage of the litigation. *Id.* at 718. Had Whitney been diligent, she would have performed the relevant research at the outset of the litigation, and at least prior to the scheduled March 6, 2014, deadline for amending her Complaint. *Id.* Furthermore, Whitney waited to seek leave to plead the new claims until a year-and-a-half after the suit was filed; just over a year after the deadline for amending pleadings; more than 3 months after the close of discovery; and more than a month after the defendants filed their Motion For Summary Judgment. *Cf. id.* at 717. These circumstances demonstrate exactly the opposite of "good cause" and "diligence," the requirements for post-deadline amendments. *Id.* at 716. The defendants are also prejudiced by their inability to challenge the new claims at summary judgment. *But see id.* at 717 ("While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, we will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines.").

Finally, *Baker v. John Morrell*, 266 F. Supp. 2d 909 (N.D. Iowa 2003), *aff'd*, 382 F.3d 816 (8th Cir. 2004), on which Whitney relies, is entirely distinguishable. First, both my decision in the district court and the decision on appeal in *Baker* were entered before the Eighth Circuit Court of Appeals clarified, in *Popoalii* and *Sherman*, that Rule 16 of the Federal Rules of Civil Procedure, not Rule 15, applies to a post-deadline motion to amend a complaint. Nevertheless, even applying a "tried by consent" standard under Rule 15, the appellate court was persuaded that I had not abused my discretion in allowing the amendment to add ICRA claims, as well as Title VII claims, because "[t]he parties

agree[d] the proof and legal standards applicable to the Title VII claims and the ICRA claims [we]re the same," and the amendment did not require the opposing party to take a position inconsistent with its position as to previously-pleaded claims. *Baker*, 382 F.3d at 831; *see also id.* at 831-32 (finding that I did not abuse my discretion by concluding that the amendment was also permitted under Rule 54(c) of the Federal Rules of Civil Procedure). Here, Whitney's new claims involve entirely *different* legal theories, even if they involve essentially identical factual proof—which the defendants dispute.

Whitney's Motion For Leave To Amend Complaint is denied.

## III.    CONCLUSION

Upon the foregoing,

1.    The defendants' February 2, 2015, Motion For Summary Judgment (docket no. 74) is **granted in part and denied in part**, as follows:

a.    The part of the Motion seeking summary judgment on Whitney's sexual harassment claims under Title VII and the ICRA in **Counts I** and **II** is **granted**;

b.    The defendants' Motion is otherwise **denied**;

2.    Whitney's March 9, 2015, Motion For Leave To Amend Complaint (docket no. 87) is **denied**;

3.    This case shall proceed to trial on the following claims:

a.    The remaining claims against the Hospital and the Mercy Defendants, consisting of retaliation for complaining about sexual harassment in violation of the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216, in **Count I**; retaliation for complaining about sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, in **Count II**; disability discrimination and retaliation in violation of the ICRA in **Count III**; failure to

accommodate disabilities, disability discrimination, and retaliation in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., in **Count IV**; and "discrimination" in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, based on adverse action allegedly taken because Whitney took FMLA leave, within the scope of § 2615(a)(1) and *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1007 (8th Cir. 2012), in the remaining part of **Count V**; and

b. The remaining claims against Price, consisting of retaliation for complaining about sexual harassment in violation of the ICRA in **Count I**; retaliation for complaining about sexual harassment in violation of Title VII in **Count II**, and the § 2615(a)(1) (*Pulczinski*) claim in the remaining part of **Count V**.

**IT IS SO ORDERED**.

**DATED** this 21st day of April, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA