IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| NICOLE WHITNEY,<br><br>Plaintiff,<br><br>vs.<br><br>FRANKLIN GENERAL HOSPITAL; MERCY HEALTH SERVICES - IOWA CORP; MERCY HEALTH NETWORK, INC.; and KIM PRICE,<br><br>Defendants. | No. C13-3048<br><br>RULING ON MOTION TO QUASH |

TABLE OF CONTENTS

I.   INTRODUCTION ................................................. 1

II.  RELEVANT FACTS AND PROCEEDINGS ......................... 2
     A.   Complaint ................................................ 2
     B.   Discovery ................................................ 2
     C.   Subpoena Duces Tecum .................................... 3

III. DISCUSSION .................................................. 6
     A.   Timely Service of Subpoena ............................... 6
     B.   Discovery Deadline ....................................... 9
     C.   Attorney-Client Privilege and Work Product Doctrine ...... 10
          1.   Attorney-Client Privilege ........................... 10
          2.   Work Product Doctrine ............................... 17

IV.  ORDER ....................................................... 18

## I. INTRODUCTION

This matter comes before the Court on the Motion to Quash Subpoena Duces Tecum (docket number 96) filed by Defendants on March 25, 2015, the Resistance (docket number 99) filed by Plaintiff on April 8, and the Reply (docket number 106) filed by

Defendants on April 21. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## II. RELEVANT FACTS AND PROCEEDINGS

### A. Complaint

On August 29, 2013, Plaintiff Nicole Whitney filed a complaint alleging that she was sexually abused, assaulted, and exploited by Dr. Brian Hansen while she was an employee at Defendant Franklin General Hospital. Whitney seeks damages for sexual harassment, sex discrimination, and retaliation in violation of the Iowa Civil Rights Act ("ICRA") and Title VII of the 1964 Civil Rights Act ("Title VII"). Whitney also claims disability discrimination and retaliation in violation of the ICRA and the Americans with Disabilities Act ("ADA"). Finally, Whitney claims a violation of the Family Medical Leave Act ("FMLA") and common law sexual exploitation, assault, and battery. Defendants filed answers denying the material allegations.

### B. Discovery

On January 9, 2014, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. *See* docket number 38. Among other things, the Court established an October 1, 2014 deadline for completion of discovery.[1] Judge Mark W. Bennett then set the matter for trial on June 1, 2015. At Plaintiff's request, the discovery deadline was extended to December 1, 2014. *See* docket number 54. At the parties' request, the discovery deadline was later extended to February 2, 2015. *See* docket number 62. The parties' request for a third extension, however, was denied. *See* docket number 72.

Notwithstanding my Order refusing to extend the deadline for completion of discovery a third time, the parties colluded to conduct extensive discovery following the

---

[1] The Order reads: "Deadline for *completion* of discovery: **10/1/14**." (emphasis in original)

February 2, 2015 deadline. On January 14, 2015, Plaintiff's attorney sent an email to Defendants' attorney, stating that "[g]iven the Court's recent ruling regarding the extension of deadlines, we plan to subpoena Brian Hansen for a deposition prior to the 2/2/15 discovery deadline."[2] In a response on January 16, Defendants' attorney suggested that the parties simply ignore the deadline for completion of discovery.

> Emily, I looked at the order denying the motion to extend deadlines. All it says is the deadlines will not be changed. I do not see an express prohibition on completing depositions after the deadline. Throughout my career I have done depositions by agreement after deadlines necessitated by the exigencies of being a trial lawyer including the day before trial and even during the evening while in trial.

Email from Robert M. Slovek to Emily McCarty, dated January 16, 2015 (docket number 99-2 at 28). According to Whitney's resistance to the instant motion, the parties have taken 13 depositions by agreement after the deadline established by the Court for completion of discovery.

### C. Subpoena Duces Tecum

Defendant Kim Price's deposition was taken by Whitney on December 16, 2014. Price, who is Franklin General's CEO, testified that he met with Whitney and "informed her that — under advice of counsel — that she was going to be put on a six-month probation."[3] Plaintiff's counsel followed up with additional questions, and Price confirmed that the decision to place Whitney on probation was done under the advice of attorney Gene La Suer. According to Price, "I'm not aware of any others that were

---

[2] Email from Emily McCarty to Robert M. Slovek, dated January 14, 2015 (docket number 99-2 at 28).

[3] Deposition of Kim Price (docket number 99-2 at 2), 81:13-15.

3

involved at the time."[4] When asked later whether it was Mr. La Suer's "recommendation that all the women should be placed on probation," Price responded "correct."[5]

The next day, December 17, 2014, Whitney took the deposition of Victoria Lynn Veldhuizen-Kruse, Franklin General's Human Resources Manager. Veldhuizen-Kruse also testified regarding Mr. La Suer's involvement in the decisions to discipline and eventually fire Whitney. In response to questioning by Plaintiff's attorney, Veldhuizen-Kruse disclosed that she had a phone call with Mr. La Suer, in which she described the various complaints being asserted against Whitney. Veldhuizen-Kruse was asked "what was said in response," and Veldhuizen-Kruse testified that La Suer said "to go ahead and let Nicole go."[6]

On January 6, 2015, Defendants served supplemental RULE 26(a)(1) disclosures.[7] *See* docket number 96-3. The supplemental disclosures identify two additional persons whom "defendants believe may have discoverable information." Specifically, Defendants identified attorneys Tammy Gentry and Gene La Suer. Ms. Gentry represented Dr. Hansen in criminal proceedings, and Mr. La Suer has provided legal advice to Defendants on employment-related issues, including the subject of this lawsuit.

In her resistance, Whitney asserts that "[d]espite this disclosure, it was not until after the deposition of prosecutor Susan Krisko that it became clear how significant Gene

---

[4] *Id.*, 83:4-14.

[5] *Id.*, 87:22-88:2.

[6] Deposition of Victoria Veldhuizen-Kruse (docket number 99-2 at 8), 208:10-22.

[7] The supplemental disclosures are dated January 6, 201̲4, and the certificate of service states that the supplemental disclosures were served on January 6, 201̲4, but that is clearly a scrivener's error.

4

LaSuer's advice was to Defendants' theory of the case."[8] On February 13, 2015, Defendants' counsel took the deposition of Krisko, an Iowa Assistant Attorney General who prosecuted Dr. Hansen for the crime of sexual exploitation. Defendants' counsel asked Krisko to "focus on Gene LaSuer's advice and he's been identified as a witness and he's going to come to trial."[9] Defendants' counsel then questioned Krisko on whether Mr. La Suer was "wrong" in advising Defendants that Whitney should be placed on probation.

Later that same day (February 13), Plaintiff's attorney sent an email to Defendants' attorney, stating that "[w]e also want to depose Gene LaSeur [sic] after Bob's questioning of Ms. Krisko this morning."[10] Defendants' attorney responded later that day, stating that "[w]e will contact Mr. LaSuer and see if March 3 works. If not, we will get other potential dates."[11] In the weeks that followed, the parties exchanged a number of emails attempting to schedule Mr. La Suer's deposition.

Apparently in anticipation of the deposition, Whitney prepared a subpoena duces tecum addressed to Mr. La Suer, dated March 6, 2015. The subpoena was hand-delivered to Mr. La Suer on March 10. In her resistance, Whitney states that she intended to email a copy of the subpoena to Defendants' counsel, and send a hard-copy on the same date. Apparently, however, the subpoena was not emailed and the hard-copy did not reach Defendants' counsel until March 12.

---

[8] Plaintiff's Brief (docket number 99-1) at 3.

[9] Deposition of Susan Krisko (docket number 99-2 at 12), 64:19-21.

[10] Email from Brooke Timmer to Matthew M. Enenbach, dated February 13, 2015 (docket number 99-2 at 14-15).

[11] Email from Matthew M. Enenbach to Brooke Timmer, dated February 13, 2015 (docket number 99-2 at 14).

On March 19, 2015, Defendants' counsel wrote to Plaintiff's counsel, stating that "Defendants no longer intend to call Gene La Suer as a witness."[12] In their brief filed in support of the instant motion to quash, however, Defendants make it clear that they intend to offer testimony that they consulted with Mr. La Suer prior to making employment decisions relating to Whitney.

> It is important to note that Defendants' decision to not waive their attorney-client privilege does not preclude Defendants from offering facts, in the form of testimony, that one or more of them consulted Mr. LaSuer prior to making employment decisions related to this matter.

Defendants' Brief (docket number 96-1) at 8. Defendants add a footnote that states "Defendants do not intend on eliciting any evidence at trial regarding the content of any legal advice provided to Defendants by Mr. LaSuer."

### III. DISCUSSION

Defendants ask the Court to quash the subpoena served on Mr. La Suer for three reasons. First, they note the subpoena was served on Mr. La Suer before it was served on Defendants. Second, Defendants argue that the subpoena is untimely because it was issued after the close of discovery. Third, Defendants assert that the documents and information sought in the subpoena are protected by the attorney-client privilege and the work product doctrine.

### A. Timely Service of Subpoena

The subpoena directed to Mr. La Suer is dated March 6, 2015. Plaintiff asserts in her brief that she "served Gene LaSuer with a subpoena duces tecum on March 6."[13] In a footnote, Whitney states that "[t]he subpoena was meant to be emailed to Defendants'

---

[12] Email from Matthew M. Enenbach to Paige Fiedler, dated March 19, 2015 (docket number 99-2 at 20).

[13] Plaintiff's Brief (docket number 99-1) at 5.

counsel of record the same day with a hard copy mailed. The email was inadvertently not sent, but the subpoena *was* mailed to defense counsel the same day."[14] Later in her brief, however, Whitney asserts that "[o]n March 10, 2015, Plaintiff served the subpoena duces tecum on Gene LaSuer and also mailed a copy of the subpoena to Defendants."[15] Based on Defendants' Exhibit C and Mr. La Suer's affidavit, it appears that the subpoena was hand-delivered to Mr. La Suer on March 10 and, most likely, mailed to Defendants' attorneys on the same date. It arrived at counsels' office in Omaha on March 12. It was not emailed.

FEDERAL RULE OF CIVIL PROCEDURE 45(a)(4) requires a subpoena duces tecum to be served on each party before it is served on the person to whom it is directed.[16] In *Firefighter's Institute for Racial Equality v. City of St. Louis*, 220 F.3d 898 (8th Cir. 2000), the plaintiff served a subpoena duces tecum on two nonparties on "the last day of discovery," but failed to serve the defendant with prior notice of the commanded production of documents. The Eighth Circuit concluded that the trial court's decision to quash the subpoena was "proper." In *Haviland v. Catholic Health Initiatives*, 692 F. Supp. 2d 1040 (S.D. Iowa 2010), the plaintiff served a subpoena on a nonparty after the extended discovery deadline had expired. The Court found, however, that he failed to provide the defendant with "due and proper notice." The magistrate judge quashed the subpoena and the district court judge found that his decision was not "clearly erroneous or contrary to law." *Id.* at 1049.

---

[14] *Id.*, fn. 2.

[15] *Id.* at 8.

[16] "If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." FED. R. CIV. P. 45(a)(4).

As noted by Whitney in her brief, however, courts have also routinely denied a motion to quash based on the technical requirements of RULE 45, if there is no prejudice to the opposing party. For example, in *Ezell v. Parker*, 2015 WL 859033 (S.D. Miss.), the plaintiffs provided the defendants with notice of the subpoenas "immediately after service, and Defendants were not deprived of a fair opportunity to protect their interests." *Id.* *1, fn.1. Under those circumstances, the Court declined to quash the subpoenaes based on the plaintiffs' failure to comply with FEDERAL RULE OF CIVIL PROCEDURE 45(a)(4).[17] *See also Systems Products and Solutions, Inc. v. Scramlin*, 2014 WL 3894385 (E.D. Mich.) at *6 (concluding that because the defendant "has not been prejudiced by any technical violation of RULE 45, the Court deems it prudent to address the merits of his motion"); *Black v. Kyle-Reno*, 2014 WL 667788 (S.D. Ohio) at *2 (concluding that because the plaintiff received copies of the subpoenaes three days later, and had an opportunity to move to quash the subpoenaes, the plaintiff "has not been prejudiced by any technical violation of RULE 45, and the Court may address the merits of plaintiff's motion"). Other courts have reached the same conclusion:

> It is undisputed that defendants failed to comply with RULE 45's notice provision. However, plaintiffs have suffered no irreversible prejudice from the lack of notice. Plaintiffs were able to lodge their objections to the subpoenas and the Court entered an agreed interim order forestalling compliance with the subpoenas until the motion to quash could be finally resolved. Thus, the Court may move beyond the RULE 45 violation and address the merits of plaintiffs' motion.

*Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 252 (S.D. Ohio 2011) (citing *McClendon v. TelOhio Credit Union, Inc.*, 2006 WL 2380601 (S.D. Ohio)).

---

[17] The motion to quash was granted nonetheless, however, because the subpoenaes sought information which was not reasonably calculated to lead to admissible evidence.

8

Turning to the facts in the instant case, Defendants received a copy of the subpoena in the mail two days after it was served on Mr. La Suer. The subpoena commanded Mr. La Suer to produce certain documents at the offices of Plaintiff's attorneys on March 25, some 15 days after it was served on Mr. La Suer and 13 days after Defendants' counsel received a copy. Defendants filed the instant motion to quash on March 25, the date when the documents were otherwise required to be produced pursuant to the subpoena. Defendants do not argue that they have been prejudiced in any way by Plaintiff's technical failure to comply with RULE 45(a)(4). Under these circumstances, the Court concludes that Whitney's failure to provide Defendants' counsel with a copy of the subpoena before it was served on Mr. La Suer does not require that it be quashed.[18]

### B. Discovery Deadline

Next, Defendants argue that the subpoena is untimely because it was issued after the close of discovery, and should be quashed for that reason. On January 9, 2014, the Court established an October 1, 2014 "deadline for *completion* of discovery." The deadline was subsequently extended to December 1, 2014, and extended again to February 2, 2015. The Court denied, however, the parties' request for a third extension. In response to the Order refusing to extend the deadline for completion of discovery, the parties simply agreed to ignore the Court's Order. Apparently, the parties have continued to engage in discovery after February 2, 2015, and have taken 13 depositions. Defendants cannot ignore the Court's Order establishing a deadline for completion of discovery when it is convenient for them to do so, and then invoke the deadline for discovery when it suits their purposes. The subpoena will not be quashed on that basis.

---

[18] Parenthetically, Whitney notes that Defendants did not raise a RULE 45(a)(4) objection until they filed their motion to quash. If the objection had been made earlier, Whitney could have simply prepared a new subpoena duces tecum, provided Defendants' counsel with a copy, and then served Mr. La Suer. *See Bonzani v. Shinseki*, 2014 WL 2521849 (E.D. Cal.) at *2.

### C. *Attorney-Client Privilege and Work Product Doctrine*

In her subpoena duces tecum, Whitney commands Mr. La Suer to produce all communications and other documents in three areas: first, all documents relating to "any advice or recommendations" which Mr. La Suer gave to Defendants and others "regarding disciplining, counseling, or terminating employees on account of Dr. Brian Hansen's interactions" with Whitney and others. Second, all documents upon which Mr. La Suer "based or memorialized" his understanding of Dr. Hansen's interactions with Whitney and other employees. Third, all documents which Mr. La Suer exchanged with other attorneys, including those attorneys appearing on Defendants' behalf in the instant action.

FEDERAL RULE OF CIVIL PROCEDURE 26(b)(1) allows discovery "regarding any *nonprivileged* matter that is relevant to any party's claim or defense." (emphasis added) Here, Defendants claim that the information sought in the subpoena falls within the attorney-client privilege and the work product doctrine. Whitney argues that Defendants have expressly or impliedly waived the attorney-client privilege, and the work product doctrine does not apply.

#### 1. *Attorney-Client Privilege*

The federal common law governs a claim of privilege in this case.[19] FED. R. CIV. P. 501. *See also Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985) ("Because the plaintiffs have sued the defendants for a violation of federal law, the federal law of privilege applies to this issue."). Because Defendants claim the benefit of the attorney-client privilege, they have the burden of establishing the right to invoke its protection. *Id. See also Exotica Botanicals, Inc. v. Terra Intern., Inc.*, 612 N.W.2d 801,

---

[19] Whitney asserts that because her claim includes both state and federal causes of action, the Court should also take Iowa law "into account." Plaintiff's Brief (docket number 99-1) at 12 (citing *Hansen v. Allen Memorial Hosp.*, 141 F.R.D. 115, 122 (S.D. Iowa 1992)).

804 (Iowa 2000) (the party asserting the privilege has the burden of showing its applicability).

Whitney concedes that communications between Mr. La Suer and Defendants fall within the parameters of the attorney-client privilege. The Davis Brown law firm has been retained as counsel for Mercy Health Services-Iowa Corp. and Mercy Health Network, Inc. (collectively, "Mercy") since approximately 2009. The Davis Brown law firm has also been retained as counsel for Franklin General Hospital ("FGH") since approximately 2011. As an attorney with Davis Brown, Mr. La Suer has provided "numerous legal services to Mercy and FGH, including, but not limited to, general and specific employment-related advice and representation in administrative hearings."[20] Specifically, Mr. La Suer "provided legal advice to Mercy and FGH related to the subject matter of this action as well as the Subpoena."[21]

It is undisputed that Mr. La Suer communicated with Defendants in his capacity as a legal adviser. Accordingly, any communications or other documents relating to "any advice or recommendations" given by Mr. La Suer to Defendants — the first category of documents identified in the subpoena — fall within the attorney-client privilege. The privilege may be waived, however, either expressly or by implication. *Hollins*, 773 F.2d at 196. *See also Union County, Iowa v. Piper Jaffray & Co., Inc.*, 525 F.3d 643, 646 (8th Cir. 2008) (applying Iowa law). Whitney argues that Defendants waived their claim to the attorney-client privilege when Kim Price and Victoria Veldhuizen-Kruse testified, without objection, regarding the substance of the advice given by Mr. La Suer.

In *Hollins*, members of a city commission sued the city and the mayor after the mayor appointed his own commissioners. When the plaintiffs attempted to meet, the mayor had them arrested. The plaintiffs sought to depose the city's attorney, but the city

---

[20] Affidavit of Gene La Suer (docket number 96-6) at 1, ¶ 5.

[21] *Id.* at 2, ¶ 8.

11

argued that the attorney-client privilege applied. The Court concluded, however, that the privilege was impliedly waived when the mayor testified as to the substance of his conversations with the city's attorney.

> On plaintiffs' direct examination of him, Powell testified as to the substance of his conversations with the City's attorney, as well as to the substance of his conversations with his own attorney. This testimony occurred before the City's attorney was called as a witness. Because the City's attorney failed to object to the plaintiffs' relevant questions of Powell, it waived the attorney-client privilege.

*Hollins v. Powell*, 773 F.2d 191, 197 (8th Cir. 1985).

Similarly, Kim Price (Franklin General's CEO) and Victoria Veldhuizen-Kruse (Franklin General's Human Resources Manager) testified, without objection, regarding advice given by Mr. La Suer in this case. Mr. Price testified that he told Whitney she would be placed on a six-month probation "under advice of counsel." When asked specifically whether it was Mr. La Suer's "recommendation that all the women should be placed on probation," Price responded "correct." Similarly, when questioned by Whitney's attorney at her deposition, Veldhuizen-Kruse testified that Mr. La Suer told her "to go ahead and let Nicole go." The Court concludes that by testifying regarding the substance of their communications with Mr. La Suer, Defendants have waived the attorney-client privilege. *Id.* at 196 ("Waiver will be implied when a client has testified concerning portions of the attorney-client communication.); *Sedco Intern., S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982) (same).

Defendants attempt to avoid this result by informing Plaintiff, after the fact, that Mr. LaSuer will not be called as a witness at trial. The depositions of Price and Veldhuizen-Kruse were taken on December 16 and 17, respectively. On January 6, Defendants served supplemental RULE 26(a)(1) disclosures, identifying Mr. La Suer as a person whom "Defendants believe may have discoverable information." When the

deposition of Susan Krisko was taken on February 13, Defendants' counsel asked Krisko to "focus on Gene LaSuer's advice and he's been identified as a witness and he's going to come to trial." Whitney served Mr. La Suer with the subpoena on March 10, with a copy to Defendants' counsel on March 12. On March 19, Defendants' counsel wrote to Plaintiff's counsel, stating that "Defendants no longer intend to call Gene LaSuer as a witness."

It is unclear to me whether Defendants are claiming a good faith defense based on the advice of counsel. Defendants initially assert that they may show their good faith by testifying they consulted with their attorney before taking any action.

> It is important to note that Defendants' decision to not waive their attorney-client privilege does not preclude Defendants from offering facts, in the form of testimony, that one or more of them consulted Mr. LaSuer prior to making employment decisions related to this matter. It further does not preclude Defendants from arguing that their consultation with counsel should be considered, among other facts, by the jury in determining whether Defendants acted in good faith.

Defendants' Brief (docket number 96-1) at 8. While intending to offer evidence they consulted with Mr. La Suer — and asking the jury to consider that fact "in determining whether Defendants acted in good faith" — Defendants argue that the advice they received is not discoverable because they "do not intend on eliciting any evidence at trial regarding the content of any legal advice provided to Defendants by Mr. LaSuer."[22] Clearly, Defendants want the jury to conclude that they followed the advice of their attorney, without being required to disclose what that advice may have been.

After Whitney argued in her brief that "Defendants want to have it both ways," Defendants soft-sell their "good faith" claim in their reply brief.

---

[22] Defendants' Brief (docket number 96-1) at 8, fn. 2.

> Defendants have not impliedly waived the attorney-client
> privilege by injecting the issue of "good faith" into the
> litigation. Neither Mr. Price's nor Ms. Kruse's testimony
> rises to the level of a good faith "defense." . . . It is Plaintiff,
> and not Defendants, who put Defendants' good faith or alleged
> lack thereof at issue in this action.

Defendants' Reply Brief (docket number 106) at 11. Defendants also insist in their reply brief that they "have not placed Mr. LaSuer's advice at issue in front of a jury . . . Defendants simply have not introduced such evidence in this case, before a jury or otherwise."[23] I disagree. Defendants want to eat their cake and have it too. Defendants want to offer testimony that they consulted with Mr. La Suer prior to taking any action, and have the jury conclude they acted in good faith by relying on his advice. Without knowing the substance of the advice, however, it is not possible to determine whether they followed that advice. Because Defendants want the jury to conclude that they followed Mr. La Suer's advice, they have effectively placed the content of Mr. La Suer's advice at issue.

In *Dorr-Oliver Inc. v. Fluid-Quip, Inc.*, 834 F. Supp. 1008 (N.D. Ill. 1993), the plaintiff argued that the defendants' "use of the attorney-client privilege as a sword to buttress a good faith argument waives defendants' ability to use the attorney-client privilege as a shield to protect them from discovery requests and deposition requests." *Id.* at 1011. The Court concluded that because the defendant was asserting their good faith reliance on the opinion of their counsel, the content of the communication was discoverable.

> Defendants cannot have it both ways; they cannot seek refuge
> in consultation with counsel as evidence of their good faith yet
> prevent Door-Oliver from discovering the contents of the
> communication. . . .

---

[23] Defendants' Reply Brief (docket number 106) at 12.

14

> Defendants seek to distinguish this case from the two decisions discussed above, claiming that they are not asserting or relying on the content of any legal opinion; they are simply invoking the fact of their consultation with counsel as one aspect of their prudent conduct in building their good faith defense to willful infringement. **Defendants' claim defies logic.** Defendants clearly state that part of their good faith was seeking advice of counsel. Merely asking a lawyer a question is not in itself probative evidence of good faith. **Whether or not defendants acted in good faith depends on what legal advice they received and whether they followed that legal advice.**

*Door-Oliver*, 834 F. Supp. at 1012 (emphasis added). I believe the same principle applies here. Fairness prohibits Defendants from offering testimony that they consulted with their attorney before taking any action, thereby inferring their good faith, but prohibiting Plaintiff from discovering and potentially offering evidence regarding the substance of those communications. A waiver by implication will be found "when the conduct places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege." *Sedco*, 683 F.2d at 1206 (quoting 8 J. Wigmore, Evidence § 2388, at 855 (McNaughton rev. 1961)).

In support of their position, Defendants cite *Haviland v. Catholic Health Initiatives-Iowa Corp.*, 692 F. Supp. 2d 1040 (S.D. Iowa 2010). The Court believes their reliance is misplaced. In *Haviland*, the Court denied the plaintiff's motion to compel because it was untimely. The Court noted alternatively, however, that it also lacked merit. The issue before the Court was whether information gained pursuant to an investigation conducted by the defendant's attorneys constituted protected work product. The Court concluded that because the defendant did *not* intend to rely on advice of counsel as a defense, the materials were not discoverable.

> Defendant has explicitly represented to the Court that "it was not, and would not, be relying upon an advice of counsel defense in this case." Thus, it does not appear that Defendant has put, or intends to put, the information sought to be

> discovered "at issue" in this case. Accordingly, the work
> product from their counsel's investigation must remain
> protected despite Plaintiffs' desire to procure it. The Court
> notes that if Defendant does attempt to submit at trial a defense
> based on improperly withheld discoverable material, Plaintiffs
> are not without recourse, as Plaintiffs can always move to
> estop introduction of such evidence at trial.

*Haviland*, 692 F. Supp. 2d at 1046 (internal citation omitted). This case is distinguishable from *Haviland*, because Defendants *do* intend to offer evidence that they consulted with their attorney before taking any action, and they will argue the jury should consider that fact in deciding if Defendants acted in good faith. While Defendants here advise the Court that they do not intend to offer testimony regarding the content of those discussions, they clearly want the jury to infer that they simply followed their attorney's advice.[24]

This rule has been consistently applied by the Eighth Circuit. *See United States v. Workman*, 138 F.3d 1261, 1264 (8th Cir.1998) ("The attorney client privilege cannot be used as both a shield and a sword, and [the defendant] cannot claim in his defense that he relied on [his attorney's] advice without permitting the prosecution to explore the substance of that advice."); *Sedco*, 683 F.2d at 1206 ("Courts have found a waiver by implication . . . when a client asserts reliance on an attorney's advice as an element of a claim or defense."). Here, Defendants want the jury to conclude that they were following the advice of counsel when they took action against Whitney, but seek to invoke the attorney-client privilege to prevent discovery of what was actually said. This is not permitted.

In summary, the Court concludes that while communications between Mr. La Suer and Defendants would otherwise be protected by the attorney-client privilege, the privilege

---

[24] As noted earlier in this Ruling, the *Hollins* Court also granted a motion to quash a subpoena, which the defendant argued sought to procure attorney-client privileged and work product information. The motion to quash was not granted on the merits, however, but was instead granted because the plaintiffs failed to comply with RULE 45(b)(1) [now found in RULE 45(a)(4)].

was waived when Price and Veldhuizen-Kruse testified, without objection, regarding advice given by Mr. La Suer in this case. Alternatively, the privilege is waived by Defendants' apparent intention to offer testimony that they conferred with Mr. La Suer before taking any action, presumably acted on his advice, and argue this is evidence of their good faith.

### 2. *Work Product Doctrine*

The second category of documents referred to in the subpoena commands Mr. La Suer to produce any documents on which he "based" his understanding of Dr. Hansen's interactions with Whitney and others, and any documents which "memorialized" his understanding of those interactions. The third category of documents is addressed to communications between Mr. La Suer and other attorneys representing Defendants or Dr. Hansen, or documents exchanged between them. Defendants argue that any documents falling within these two categories are protected by the work product doctrine.

In the landmark case of *Hickman v. Taylor*, 329 U.S. 495 (1947), the Court held that communications which fall outside the scope of the attorney-client privilege may nonetheless be protected by the work product doctrine. Work product may consist of "raw factual information," or it may include the attorney's "mental impressions, conclusions, opinions or legal theories." *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). Ordinarily, a party may not discover documents prepared in anticipation of litigation by another party unless the documents are otherwise discoverable and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A). If the Court orders discovery of those materials, however, it must protect against disclosure of "the mental impressions, conclusions, opinions, or legal theories" of the opposing party. RULE 26(b)(3)(B). *See also Pepsico, Inc. v. Baird,*

*Kurtz & Dobsen, LLP*, 305 F.3d 813, 817 (8th Cir. 2002). Like the attorney-client privilege, however, "[t]he work product privilege is not absolute and may be waived." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002).

The Court concludes the documents being sought by Whitney in categories 2 and 3 of the subpoena fall within the protection of the work product doctrine. Documents relied on by Mr. La Suer to reach his legal opinions, or any documents in which he "memorialized" his opinions, quintessentially fall within his work product. Similarly, I believe documents exchanged with the other attorneys in anticipation of litigation are protected by the work product doctrine. Whitney has failed to show that she has a "substantial need for the materials" or that her failure to obtain materials would constitute an "undue hardship." Furthermore, I find no evidence of waiver.

## IV. ORDER

For the reasons set forth above, the Motion to Quash Subpoena Duces Tecum (docket number 96) filed by Defendants is **GRANTED in part** and **DENIED in part** as follows: Mr. La Suer is required to produce those documents which are described by paragraph 1 of the attachment to the subpoena. Mr. La Suer is not required to produce those documents which are described by paragraphs 2 and 3 of the attachment to the subpoena.

DATED this 23rd day of April, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA